## STATE OF CONNECTICUT *v.* ALBERT J. GREEN
## (AC 18704)

Schaller, Spear and Spallone, Js.

Argued June 1—officially released November 9, 1999

*Jeremiah Donovan*, for the appellant (defendant).

*Lawrence J. Tytla*, senior assistant state's attorney, with whom, on the brief, was *Kevin T. Kane*, state's attorney, for the appellee (state).

*Opinion*

SPALLONE, J. The defendant, Albert J. Green, appeals from the judgment of conviction, rendered after a jury trial, of the crimes of sexual assault in the first degree in violation of General Statutes § 53a-70, kidnapping in the first degree in violation of General Statutes § 53a-92 and threatening in violation of General Statutes § 53a-62. The defendant claims that the trial court improperly (1) allowed the victim's father to testify concerning her out-of-court statements about the sexual assault, (2) excluded evidence that the defendant and the victim had engaged in consensual sex on the day preceding the incident, (3) admitted a coat hanger as an exhibit, (4) limited voir dire concerning the authenticity of a knife and its ultimate admission as an exhibit, (5) denied the defendant's motion for acquittal on the charge of kidnapping because of insufficiency of the evidence and (6) excluded testimony that the victim refused to meet with an investigator from the public defender's office. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim lived with her two children. She and the defendant, who is the father of her five year old son, had been involved in a seven year relationship. After approximately six years of living with the defendant, the victim, and her children moved to an apartment to which the defendant did not have a key. The

defendant was not on the lease and did not take responsibility for any of the utility bills. The defendant, however, visited the apartment almost every day, and kept clothes and received some mail there.

Prior to August 31, 1997, the relationship between the defendant and the victim had deteriorated to a point where they engaged in daily confrontations. The defendant, despite the denials of the victim, was suspicious and jealous of other men, including boyfriends of the victim during her high school years. The victim was considering ending her relationship with the defendant.

On August 31, 1997, while the children played and watched television, the victim and the defendant went to the bedroom, where the defendant, in an agitated condition, began to look through the telephone book. He told the victim that he was checking on her. He referred to a former boyfriend of the victim and said he believed that she was "cheating" and that he "wanted the truth." The defendant procured a knife from the kitchen, returned to the bedroom and shut the door, stating that he was "going to find out the truth." The victim began to cry and continued to deny any involvement.

The defendant declared that he did not believe her, that he was tired of her crying and whining. He stuffed two socks in the victim's mouth and tied a belt around her head and mouth to secure the socks. With the knife he had brought from the kitchen, he stabbed the mattress, about one foot from the victim, three times. He warned the victim that if he did not get the truth from her, he would cripple her by sticking the knife into her right leg above her knee and twisting it. He placed the knife on her knee but did not push it in. He then placed the knife on the bed and told the victim to pick it up. After she refused, the defendant retrieved the knife and told her to remove her pants. The victim did so, after

which she was told to lie on the bed, to bring her knees to her chest and to put her arms to her side. The defendant then tied her arms and legs together. While the victim was tied, the defendant assaulted the victim by inserting a wire coat hanger and moving it back and forth, first in the victim's vagina, then in her rectum.

The victim struggled and, in so doing, broke away from the belt with which the defendant had bound her. The victim begged the defendant to stop. The defendant responded that if he were in her position he also would beg. The defendant acknowledged that he had gone too far and "had to finish it." He stated that he was so angry that he was "ready to kill somebody."

The victim pleaded that if he loved her he would stop. The defendant, pausing, responded, "I'm going to give you a chance. Take the kids and go now." The victim, after cleaning blood from her body in the bathroom, put on a pair of jeans, gathered her children and left.

The victim went directly to her parents' house where she met her father in the yard and told him of the events that occurred. The father drove her to a hospital where she was examined by Russell Stokes, an expert in emergency medicine.

Stokes testified that his examination disclosed red marks and bruising on the victim's left wrist, which was consistent with her having been bound. His internal pelvic examination disclosed several recent scratches and lesions in the area of her vaginal opening. He also found internal scratches and the presence of blood in the victim's rectal area, leading him to conclude that they were caused by recent trauma. On cross-examination, Stokes testified that the injuries he described could not have been caused during sexual intercourse, particularly in the rectal area.

When the police apprehended the defendant, he denied his identity at first. The police also went to the victim's apartment and seized the two belts with which the victim had been bound. Also retrieved was the telephone book, which was on the bed, a small knife with a black handle attached to it by three rivets and a coat hanger. The hanger, after examination at the police forensic laboratory, was found to be encrusted with dried blood and also contained urobilinogen, a component of feces.

I

The defendant first claims that the trial court improperly permitted the victim's father to testify as to what the victim had related to him about the incident with the defendant in violation of our Supreme Court's holding in *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996) (en banc).[1] We do not agree.

Even if the court improperly admitted the father's testimony, such error, in the context of the entire evidence, was harmless. The court made an evidentiary ruling, not constitutional in nature, which requires the defendant to establish on appeal that the error was harmful. *State* v. *Marshall*, 246 Conn. 799, 812, 717 A.2d 1224 (1998); *State* v. *Cooper*, 182 Conn. 207, 212, 438 A.2d 418 (1980). The defendant must establish "that it is more probable than not that the erroneous action of the court affected the result." (Internal quotation marks

---

[1] In *State* v. *Troupe*, supra, 237 Conn. 304, our Supreme Court modified the constancy of accusation doctrine, holding "that a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator." The defendant did not raise a *Troupe* claim in the trial court, but suggests that this claim was preserved at trial by his hearsay objection to the victim's father's testimony.

omitted.) *State* v. *McIntyre*, 242 Conn. 318, 329, 699 A.2d 911 (1997); *State* v. *Wilkes*, 236 Conn. 176, 188, 671 A.2d 1296 (1996). Further, the defendant must show that the prejudice resulting from the impropriety was so substantial as to undermine confidence in the fairness of the verdict. *State* v. *Askew*, 245 Conn. 351, 371–72, 716 A.2d 36 (1998).

The defendant has failed to satisfy either of those requirements. The father's testimony was minimal and did not elaborate on any lurid details of the crime. The court instructed the jury that the testimony should not be considered substantively, but only in evaluating the victim's credibility. The challenged testimony followed the victim's lengthy and highly detailed testimony. It preceded the detailed testimony of Stokes, the emergency room physician, which included a much more detailed history of the events related by the victim as well as a detailed account of the physical observations made by Stokes. The details testified to by the physician so overwhelm the minimal testimony of the father that it would be pure speculation to believe that the father's testimony was a major consideration of the jury as to the substance of the events that occurred.

II

In his second claim, the defendant asserts that the trial court improperly precluded him from offering evidence of prior consensual sexual activity with the victim. We are not persuaded.

The defendant made several attempts to introduce evidence that he and the victim had engaged in consensual sexual intercourse on the day preceding the sexual assault. Defense counsel stated to the court: "The reason I ask about sex is that I think those injuries that are described would be consistent with having performed vaginal and anal sex sometime in close proximity to the events alleged." The court precluded the inquiry,

but indicated that it would reconsider the request at a later stage in the trial, provided the defendant established a proper medical foundation.

The court properly exercised its discretion in precluding such evidence because there was no medical foundation for how consensual intercourse could be the source of the internal rectal scratches and bleeding, particularly since defense counsel specifically disavowed any claims of anal intercourse in the time period preceding the sexual assault. As to the vaginal scratches, the defendant presented no evidence whatsoever to support his contention that they could have been caused by consensual intercourse. In fact, the testimony of Stokes, the attending physician, was that he did not believe that it was possible for the vaginal scratches to be caused in the course of consensual intercourse. Further, Stokes inadvertently mentioned prior consensual sex between the victim and the defendant, thereby placing such activity before the jury. Notwithstanding that the evidence did not establish the time frame of the consensual sex, the defendant failed to make any effort to establish that it occurred the day preceding the alleged crimes.

Again, the defendant's assertion, without an offer of medical proof that consensual intercourse could cause vaginal scratches and rectal bleeding, is speculative, not probative. The medical evidence that was introduced directly refuted such an assertion. The court properly excluded the evidence as irrelevant.

### III

As a third claim of impropriety, the defendant alleges that the trial court abused its discretion in admitting the coat hanger into evidence. He claims that the state failed to lay a foundation that adequately established the identity and unaltered condition of the hanger from the time it was seized from the victim's home to when

it was examined by a state criminologist. There is no merit to such a contention.

An object connected with the commission of a crime must be shown to be in substantially the same condition as when the crime was committed before it can be properly admitted into evidence. *State* v. *Pollitt*, 205 Conn. 61, 88, 530 A.2d 155 (1987); *State* v. *Johnson*, 162 Conn. 215, 232, 292 A.2d 903 (1972). The court has broad discretion on this evidentiary issue, and its ruling may not be overturned on appellate review except for a clear abuse of discretion. *State* v. *Johnson*, supra, 233. The state's burden with respect to establishing a chain of custody is met by showing "that it is reasonably probable that the substance has not been changed in important respects . . . ." *State* v. *Jones*, 167 Conn. 228, 239–40, 355 A.2d 95 (1974). "The court must consider the nature of the article, the circumstances surrounding its preservation and custody and the likelihood of intermeddlers tampering with it . . . ." (Internal quotation marks omitted.) *State* v. *Piskorski*, 177 Conn. 677, 697, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). There is no hard and fast rule that the state must exclude or disprove all possibility that the article has been tampered with. *State* v. *Conroy*, 194 Conn. 623, 625, 484 A.2d 448 (1984).

There was no evidence presented indicating that the coat hanger was tampered with in any way. The defendant's assertions to the contrary are merely speculative. See *State* v. *Burns*, 23 Conn. App. 602, 615, 583 A.2d 1296 (1990). The defendant has the obligation of affirmatively showing that the evidence was in some way tampered with, altered, misplaced, mislabeled or otherwise mishandled to establish an abuse of the court's discretion in admitting the evidence. See *State* v. *Barnes*, 47 Conn. App. 590, 596–97, 706 A.2d 1000 (1998). The court properly admitted the coat hanger in this case.

IV

The defendant's next claim is that the trial court improperly admitted into evidence a knife seized from the victim's home. The essence of the defendant's argument is that the court unduly limited his voir dire of the victim when he attempted to inquire about a statement she gave to the police on August 31, 1997, in which she described the knife used in the assault as containing two rivets in the handle as opposed to the three rivets shown in the exhibit.

In response to further voir dire, the victim was sure that the knife shown to her at trial was the one used in the incident. The defendant's claim of impropriety is totally without merit. Although the court limited the voir dire as to the victim's prior statement, the defendant was not restricted from a full cross-examination of the victim concerning the knife and, in fact, he makes no claim that his cross-examination was subject to any court imposed limitation. This claim therefore fails.

V

The defendant's fifth claim is that there was insufficient evidence to support his conviction of kidnapping in the first degree. He claims that the state failed to present sufficient evidence to establish an abduction. We disagree.

In reviewing claims of insufficiency of the evidence, an appellate court must first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts impliedly found by the jury. The court must then determine, on the facts thus established and the inferences reasonably drawn therefrom, whether the jury reasonably could have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Stanley*, 223 Conn. 674, 677, 613 A.2d 788 (1992).

The defendant claims that the evidence failed to establish an abduction, a necessary element of the crime of kidnapping in the first degree.[2] The court instructed the jury pursuant to General Statutes § 53a-91 (2) (B), that "abduct" means to restrain a person with intent to prevent his liberation by using or threatening to use physical force or intimidation.

Our Supreme Court has repeatedly held that if all of the elements of kidnapping, including specific intent to restrain, are proven beyond a reasonable doubt, the defendant may be convicted of kidnapping in addition to another crime, even if both offenses arise from the same conduct. *State* v. *Vass*, 191 Conn. 604, 614–15, 469 A.2d 767 (1983); *State* v. *Briggs*, 179 Conn. 328, 338–39, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980). Where the perpetrator's underlying motive for detention is the consummation of another crime, such intent does not preclude a conviction for kidnapping. *State* v. *Lee*, 177 Conn. 335, 344, 417 A.2d 354 (1979).

The defendant claims that the restraint applied in this case was merely incidental to the commission of the sexual assault. The question for the jury to decide is not whether the kidnapping was incidental to the sexual assault; *State* v. *Williamson*, 206 Conn. 685, 709–10, 539 A.2d 561 (1988); but whether the evidence of intent to restrain was sufficient to support a conviction for kidnapping. *State* v. *Briggs*, supra, 179 Conn. 339; *State* v. *Burak*, 12 Conn. App. 613, 615–16, 533 A.2d 237 (1987) (defendant may be convicted of two crimes that derive from same conduct where state able to prove

---

[2] General Statutes § 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually; or (B) accomplish or advance the commission of a felony; or (C) terrorize him or a third person . . . ."

beyond reasonable doubt essential elements of each crime). Further, the kidnapping statute does not require proof of restraint for any length of time or asportation for any distance to establish an abduction. *State* v. *Chetcuti*, 173 Conn. 165, 170, 377 A.2d 263 (1977).

The evidence presented to the jury was that the defendant held the victim on the bed with a knife to her throat, threatened to cripple her by stabbing her in the knee, bound her arms and legs with belts, stabbed the knife into the mattress and stuffed socks into her mouth to prevent an outcry. That evidence provides an ample basis for the jury's conviction of kidnapping in the first degree.

## VI

The defendant claims last that the trial court improperly precluded him from offering evidence that the victim had declined to meet with an investigator from the public defender's office who was working on the defendant's behalf. We do not agree.

Additional facts are necessary for the resolution of this claim. On November 10, 1997, Arthur Brautigan, an investigator from the public defender's office, contacted the victim and scheduled an appointment to interview her on November 12, 1997. Prior to the interview, the victim canceled, stating that she felt uncomfortable discussing the case with him. On December 2, 1997, however, a social worker employed by the public defender's office working on the defendant's behalf conducted a lengthy telephone interview with the victim. The social worker prepared a five page summary of that interview, which essentially repeated the victim's testimony and detailed other abuse by the defendant. Those facts were not refuted by the defendant.

The defendant's claim is not constitutional but is evidentiary in nature. Our standard of review is whether

the court abused its wide discretion in ruling on the relevance of the disputed evidence. *State* v. *Alvarez*, 216 Conn. 301, 309, 579 A.2d 515 (1990).

When the defendant attempted to cross-examine the victim concerning her cancelation of the November 12, 1997 interview, the state objected on the ground of relevance. The court declined to rule at the time, stating: "Why don't you go on to something else and we'll pick it up later." The defendant, however, concluded his examination of the victim without pursuing the issue further and did not ask the court to rule. In addition, the court was well aware that the victim had cooperated with the defendant subsequent to the canceled interview when she submitted to a later telephone interview with the social worker. We find no abuse of discretion and hold this claim to be without merit.

Our close review of all the claims set forth by the defendant fails to disclose that the court's rulings were improper or not in accordance with applicable law.

The judgment is affirmed.

In this opinion the other judges concurred.