BACKGROUND
EAGAN, Judge.
The plaintiff brought the present action alleging that the suspension of his gaming license and barring from the Mohegan Sun Casino was improper. The suspension was the result of an allegation that the plaintiff had stolen casino funds and placed them in his toke box for tips.
A notice dated February 19, 2003, was sent to the plaintiff suspending his gaming-license and barring the plaintiff from the Casino property.
The plaintiff filed a timely request for hearing. The hearing was held on April 23, 2003, at which time the plaintiff was present and represented himself pro se.
Following the evidentiary hearing on April 23, 2003 the hearing officer made the following Findings of Fact:
“1. The MTGC’s decision to deny Mr. LaPlante is based upon his actions on February 13, 2003, in which he stole casino funds and plaeed them in his toke box for tips.
1. MTGC presented the following Exhibits into the record:
A.(Exhibit# 1) A copy of the MTGC letter dated February 19, 2003 to Mr. LaPlante suspending his license and providing the opportunity to appeal.
B. (Exhibit# 2) A copy of Mr. La-Plante’s letter requesting a hearing.
C. (Exhibit# 3) A copy of the MTGC letter dated April 15, 2003 scheduling Mr. LaPlante’s hearing.
D. (Exhibit # 4) A copy of Mohegan Sun Incident Report 2003-000742.
E. (Exhibit # 5) A copy of a statement by Ralph LaPlante dated February 13, 2003.
F. (Exhibit # 6) A videotape of the incident on February 13, 2003 involving Mr. LaPlante.
3. Respondent has his license suspended as a result of his conduct on February 13, 2003, in which he had taken casino funds and placed them in his toke box.
4. MTGC called Corey Randolph as a witness. Mr. Randolph narrated Exhibit# 6 and indicated there were two actions, which Mr. LaPlante performed which resulted in the casino funds being placed in the toke box.
5. In reviewing the videotape, Mr. La-Plante agreed that the second incident involving the toke violation was obvious.
6. After the incidents in question, Mr. LaPlante was removed from the game and brought to the office for questioning. In his statement (Exhibit # 5), Mr. LaPlante indicates “... I admitted to the Investigators that I sometimes don’t claim all my chips because of some personal financial problems 1 having.” He goes on to further state "... so sometimes I keep money I received in tips and don’t declare them.”
7.The actions by Mr. LaPlante, which were observed by Mr. Randolph, would confirm the fact that *319 Mr. LaPlante was taking casino funds for tokes. Mr. LaPlante himself, after watching the video confirmed that the second violation was obvious.
8. Mr. LaPlante’s toke bag was counted out and found to have $166 in tips. There were also 3 green ($75.00 total) in a side pocket of the toke bag. These chips he intended to keep as Mr. LaPlante stated in his statement and at the hearing that he was having financial problems.
9. In Exhibit # 4, the following statement was made by the Reporting Investigator: “LaPlante accomplished a written statement and in that statement he related it was his intention to NOT claim the three green chips and walk out with them. He stated he did this because he had some financial problems and stepchildren who take money from him. He said he takes money (not claiming it) because he needs to insure he has a steady flow of money.”
10. Based upon the evidence and testimony, it is unclear how long these actions have been performed by Mr. LaPlante. I give no weight to a statement by Mr. LaPlante, provided after the hearing. This statement appears to be a reason to explain his actions, which he already did at the hearing. This statement can be construed as an attempt to explain further that Mr. LaPlante did nothing wrong. He was given this opportunity at the hearing.
11. Mr. LaPlante cannot be considered suitable to retain his license for the above stated reasons. There is an unknown loss to the casino in funds, and the integrity of the game was compromised by Mr. LaPlante’s actions.
ORDER
1. Mr. LaPlante’s gaming license is revoked as a result of this action.”
LEGAL STANDARD OF REVIEW
The standard of review of an agency’s final decision in an appeal filed pursuant to MTO 2002-13 is substantially similar to that under the Connecticut Administrative Procedures Act, C.G.S. Section 4-183(j). LaPietra v. Office of Director of Regulation, 1 G.D.R. 126, 127(2003). “If the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding, the decision must be upheld.” Id. The court is not permitted to substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. MTO 2002-13 Sec-tion3(j). Kochachy v. Office of the Director of Regulations, 1 G.D.R. 115, 116 (April 2003).
Nevertheless, the court may not affirm a decision not supported by substantial evidence in the record. Bialowas v. Commissioner of Motor Vehicles, 44 Conn.App. 702, 709, 692 A.2d 834 (1997). If substantial rights of the plaintiff have been prejudiced by administrative findings, inferences, conclusions, or decisions were affected by an error of law or were clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, the court shall sustain the appeal and may either remand the case or enter judgment, MTO 2002-18 Section 3(j)-(k).; Kochachy v. Office of the Director of Regulations, 1 G.D.R. 115, 117 (April 2003).
*320 As has been previously held in this court: “Adequate notice of evidence to be submitted against the plaintiff is a ‘fundamental requisite’ of ... due process rights under the Indian Civil Rights Act.” Pineiro v. Office of the Director of Regulation, Et Al., 1 G.D.R. 43, 45-46 (1999), quoting Morris v. Mashantucket Pequot Gaming Enterprise, 3 Mash. 88, 91 (1998), citing Dugan v. Mashantucket Pequot Gaming Enterprise, 1 Mash.Rep. 142, 1 Mash. 104, 106,-Am. Tribal Law-(1996).
The following Mohegan ordinances are applicable in this case. MTO 95-2 grants the Mohegan Tribal Gaming Commission the power over licensing and vests in the Director the duty of “issuing and revoking licenses and generally overseeing the integrity of the gaming operation.” Sec. 5(b)(10). Sec. 12(5) provides that the Director “shall carry out the tribe’s regulatory duties” as described in MTO 94-1, and vests in the Director “final authority over all license applications.”
MTO 94-1 incorporates the Indian Gaming Regulatory Act, 25 U.S.C. Secs. 2701 et seq., and sets forth in Sec. 9 qualifications for gaming licenses. One of the purposes is to protect against “threats to the public interest, or the interest of the Tribe or to the effective regulation and control of gaming.” See 25 U.S.C. Sec. 2710(b)(2)(F)(ii)(II).
As stated in the Kochachy ease, these ordinances comply with the requirement of Sec. 7(a) of the “Compact” to “adopt standards of operation and management to ... protect the public interest in the integrity of the gaming operations ...” (emphasis added). Kochachy v. Office of the Director of Regulations, 1 G.D.R. 115, 116 (April 2003).
REVIEW OF THE DEFENDANT’S ORDER
The plaintiff represented himself at the administrative hearing. One of the principal items of evidence was Exhibit # 6 which is a videotape of the incident on February 13, 2003 involving Mr. LaPlante. Both parties agree that the videotape was an edited version and had twelve minutes missing. The plaintiff was not provided with an opportunity to review the videotape until it was presented at the administrative hearing on April 23, 2003. Both parties submitted supplemental briefs on the effect that this should have on the disposition of the case.
This case presents two important and distinct legal issues. The first is whether the editing of the videotape was sufficiently prejudicial to the plaintiff to invalidate the prior ruling. The second issue is whether the failure to provide the plaintiff with the opportunity to review the videotape deprived the plaintiff of due process rights in regai-d to the revocation of his license.
1. The Edited Videotape
It is a stipulated fact that the videotape has been altered in that it is missing approximately 12 minutes. As a result the plaintiff has met the initial burden for this court to consider whether the admission of the videotape was proper. See State v. Burns, 23 Conn.App. 602, 615, 583 A.2d 1296 (1990); State v. Green, 55 Conn. App. 706, 713, 740 A.2d 450 (1999), cert. denied, 252 Conn. 920, 744 A.2d 438 (2000). “The defendant has the obligation of affirmatively showing that the evidence was in some way tampered with, altered, misplaced, mislabeled or otherwise mishandled to establish an abuse of the court’s discretion in admitting the evidence.” State v. Green, 55 Conn.App. 706, 713, 740 A.2d 450 (1999), cert. denied, 252 Conn. 920, 744 A.2d 438 (2000).
Since the tape was altered, it is appropriate to review the decision of the hearing *321 officer to admit the videotape. Having met this threshold standard, the court must determine the proper standard to apply. In a case involving a destroyed tape, The Supreme Court of Connecticut has set forth the appropriate analysis to follow. State of Connecticut v. Broman, 221 Conn. 788, 608 A.2d 49 (1992). As an initial matter the court must determine whether the missing twelve minutes is exculpatory in nature or potentially exculpatory in nature. If the evidence showed that it was exculpatory in nature then the court would apply the analysis under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), Broman, at p. 812, 608 A.2d 49. If the altered evidence is potentially exculpatory in nature then the analysis is controlled by Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281. (1988). Id. at p. 812, 608 A.2d 49.
Like the court in Broman, this court finds that the missing evidence is potentially exculpatory in nature. The defendant claims that the editing was done for simple efficiency of presentation. The plaintiff claims that the missing portions would show him calling for a supervisor to correct the situation and a direction from his supervisor to fix the problem. There does not exist enough evidence for this reviewing court to determine whether the missing portions of the tape are exculpatory. Therefore, if no other due process issues existed in this case, then the proper resolution of the question of whether destruction of potentially exculpatory evidence rises to the level of a violation of the plaintiffs due process rights, requires a resolution of the issue of whether the authority acted in bad faith when the evidence was destroyed. Brosrian, at p. 812, 608 A.2d 49, citing State v. Leroux, 18 Conn.App. 223, 228, 557 A.2d 1271, cert. denied. 212 Conn. 809, 564 A.2d 1072 (1989). However for the reasons set forth below, the court does not address the issue of bad faith since there is a separate potential violation of the plaintiffs due process rights due to the defendant’s failure to produce the videotape to the plaintiff.
2. The Failure to Produce the Videotape
 The defendant correctly acknowledges that the plaintiff did have a right to view the videotape prior to the administrative hearing on April 23, 2003. The defendant further acknowledges that the plaintiff did not have an opportunity to do so. Under the “substantial evidence” rule contained in the Uniform Administrative Procedure Act as contained in Connecticut General Statutes Section 4-183(g)(5), the erroneous admission of evidence will not invalidate an administrative order unless substantial prejudice is affirmatively shown. Lawrence v. Kozlowski, 171 Conn. 706, 713-715, 372 A.2d 110 (1976). In Lawrence v. Kozlowski, the claim of substantial prejudice was negated by the presence of other substantial evidence, apart from the improperly admitted documents, that supported the Commissioner of Motor Vehicles findings.
After a review of the record and exhibits submitted, the court finds that substantial prejudice to the plaintiff here has occurred. Despite the defendant’s claim to the contrary, the central and crucial item of evidence is the videotape which has been altered. The court does not find the other evidence in this case to be substantial enough to provide an independent basis to find against the plaintiff.
The fact that the videotape has been edited is a factor which a court may consider. The editing of the tape raises a question as to whether the tape that was presented at the hearing was a fair and accurate representation of fact. 29A Am Jur 2d Section 985 at p. 431 (cases and *322 citations omitted); see also Louis Vuitton S.A. v. Spencer Handbags Carp., 765 F.2d 966 (2nd Cir.1985). If the videotape had been presented to the plaintiff prior to the hearing, he would have had an opportunity to present factual witnesses to present his version of the events that may or may not have occurred during the time period in question.
Accordingly, the court finds that under the factual circumstances of this case the plaintiff was deprived of the opportunity to adequately respond to the charges which formed the basis of the revocation of his employment license. This is based upon the fact that the plaintiff was denied the opportunity to review the videotape prior to his hearing. Pineiro v. Office of the Director of Regulation, Et Al., 1 G.D.R. 43, 45-46 (1999), quoting Morris v. Mashantucket Pequot Gaming Enterprise, 3 Mash. 88, 91 (1998), citing Dugan v. Mashantucket Pequot Gaming Enterprise, 1 Mash.Rep. 142, 1 Mash. 104, 106, — Am. Tribal Law -- (1995). “Adequate notice of evidence to be submitted against the plaintiff is a ‘fundamental requisite’ of ... due process rights under the Indian Civil Rights Act.” Pineiro v. Office of the Director of Regulation, Et Al., 1 G.D.R. 43, 45-46 (1999), quoting Morris v. Mashantucket Pequot Gaming Enterprise, 3 Mash. 88, 91 (1998), citing Dugan v. Mashantucket Pequot Gaming Enterprise, 1 Mash.Rep. 142, 1 Mash. 104, 106, — Am. Tribal Law-(1995).
CONCLUSION
Based upon the above and pursuant to MTO 2002-iá, ¡sec. 3(j) and (k), the plaintiffs appeal is sustained and judgment may enter reversing the decision.