STATE OF CONNECTICUT *v.* EHSON ROSADO
(AC 26322)

Flynn, C. J., and Beach and Hennessy, Js.

Argued February 14—officially released May 6, 2008

*Raymond L. Durelli*, special public defender, for the appellant (defendant).

*Marjorie Allen Dauster*, senior assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *Anthony Bochicchio*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Ehson Rosado, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-59 (a) (5), and criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1). On appeal, the defendant claims that the trial court (1) improperly denied his motion to dismiss for lack of a speedy trial, (2) abused its discretion in denying his motion to sever, (3) improperly admitted into evidence five shell casings and (4) violated his right to due process by its improper jury instructions. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On May 26, 2003, at approximately 1 a.m., Derrick Dickens, an acquaintance of the defendant, approached a four way stop on Irving Place in Danbury. As he was doing so, a white Chevrolet Malibu stopped at an angle in the middle of the intersection, thereby blocking Dickens' path. The defendant got out of the passenger side of the Malibu and approached Dickens' car. Dickens saw a chrome object in the defendant's hand and, believing the object to be a handgun, tried to drive away. In order to do so, he hit the front driver's side of the Malibu with the passenger side of his car. As

Dickens hit the Malibu, the defendant, who was standing approximately one foot away at the time, fired a gunshot that hit the side of Dickens' car. As Dickens drove away, he heard approximately five additional gunshots fired. As a result of this incident, Dickens' car sustained bullet holes.

Four days later, on May 30, 2003, Dickens drove to the house of his girlfriend in a different car and stood outside the house talking to her. As Dickens was about to leave, he saw the defendant being dropped off in front of the house. As Dickens watched the defendant walk up the driveway, a gun fell from the defendant's waistband. When Dickens saw the gun, he yelled to his girlfriend to clear everyone away, got into his car and drove away through the backyard. He thereafter reported both incidents to the police.

The defendant subsequently was charged in an amended long form information with attempt to commit assault in the first degree, criminal possession of a firearm and breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (1). After a trial to the jury, the defendant was convicted on all counts. The defendant thereafter filed a motion for a judgment of acquittal, which the court granted as to the third count of the amended information, breach of the peace in the second degree. The defendant was sentenced to a total effective term of eighteen years incarceration consecutive to a sentence he was then serving. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the court improperly denied his motion to dismiss for lack of a speedy trial. We disagree.

The following additional facts are relevant to our resolution of the defendant's claim. While incarcerated

on other charges, the defendant received notice, dated February 4, 2004, that the present charges were pending against him and that he had the right to request a final disposition of the charges. The defendant, acting pro se, signed the acknowledgement of receipt of notification and requested a trial on those charges but did not date his signature. The defendant filed a pro se motion to dismiss on speedy trial grounds dated July 22, 2004, which alleged that on February 10, 2004, he had filed notice of a request for a speedy trial and had not been tried within the mandated 120 days.

On August 31, 2004, the defendant, through counsel, filed a motion to dismiss on speedy trial grounds, alleging that he had filed a motion for a speedy trial as an incarcerated prisoner on February 5, 2004. Jury selection commenced on September 2, 2004.[1] The parties argued the defendant's motion to dismiss on September 8, 2004. During argument, the state averred that it had not received notice of the defendant's speedy trial request. The court reserved ruling on the motion. The parties argued the motion again at sentencing on January 13, 2005, at which time the court denied the motion. The court, in a subsequent articulation of its memorandum of decision on the defendant's motion to dismiss for lack of a speedy trial,[2] found that the filing of the notice of the defendant's request for a speedy trial was

[1] For purposes of speedy trial rules, jury trial begins with voir dire examination. *State* v. *Lacks*, 58 Conn. App. 412, 416, 755 A.2d 254, cert. denied, 254 Conn. 919, 759 A.2d 1026 (2000); see also Practice Book § 43-42.

[2] The court, in its memorandum of decision on the defendant's motion to dismiss for lack of a speedy trial, found, inter alia, that there were numerous occasions on which the trial was postponed at the request of the defendant's counsel and that when the continuances were taken into account, the defendant's right to a speedy trial was not violated. On appeal, the defendant additionally takes issue with this finding, claiming that neither he nor his trial counsel requested any continuances that would toll the running of the speedy trial time period under General Statutes § 54-82c. We need not address the issue of continuances because we conclude that the 120 day period did not commence.

defective in that the defendant failed to cause to be delivered to the state's attorney or assistant state's attorney of the Danbury judicial district a written notice of the place of his imprisonment and his request for a final disposition of the information in the case, as required by General Statutes § 54-82c (a).[3]

The defendant argues that the reason for the failure of notice to the state's attorney was either malfeasance or negligence of either the warden or the state's attorney and, accordingly, the 120 day period within which § 54-82c requires that he be brought to trial commenced on

[3] General Statutes § 54-82c provides: "(a) Whenever a person has entered upon a term of imprisonment in a correctional institution of this state and, during the continuance of the term of imprisonment, there is pending in this state any untried indictment or information against such prisoner, he shall be brought to trial within one hundred twenty days after he has caused to be delivered, to the state's attorney or assistant state's attorney of the judicial district or geographical area, in which the indictment or information is pending, and to the appropriate court, written notice of the place of his imprisonment and his request for final disposition to be made of the indictment or information. For good cause shown in open court, the prisoner or his counsel being present, the court may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the warden, Community Correctional Center Administrator or other official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner and any decisions of the Board of Pardons and Paroles relating to the prisoner.

"(b) The written notice and request for final disposition referred to in subsection (a) hereof shall be given or sent by the prisoner to the warden, Community Correctional Center Administrator or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

"(c) The warden, Community Correctional Center Administrator or other official having custody of the prisoner shall promptly inform him in writing of the source and contents of any untried indictment or information against him concerning which the warden, administrator or other official has knowledge and of his right to make a request for final disposition thereof.

"(d) Escape from custody by the prisoner subsequent to his execution of the request for final disposition referred to in subsection (a) hereof shall void the request."

February 23, 2004, the day on which the certified mail receipt indicates that the defendant's request was received by the Danbury clerk's office.[4] The state responds that because a copy of the defendant's speedy trial request was not delivered to the state's attorney, as required by § 54-82c, the 120 day period did not commence. We must decide whether the 120 day period ever commenced under § 54-82c if the state's attorney failed to receive notice, regardless of whether notice was not received because of negligence or malfeasance on the part of the warden or the office of the state's attorney.

Our resolution of the defendant's claim involves questions of statutory interpretation. Accordingly, our review is plenary. See *State* v. *McCahill*, 265 Conn. 437, 446, 828 A.2d 1235 (2003).

We begin our analysis with a brief overview of the speedy trial statutory scheme. "General Statutes §§ 54-82c and 54-82d[5] provide a statutory method by which an inmate of a Connecticut penal institution who has a detainer placed against him can request and receive an expedited disposition of pending charges. The inmate must be serving a sentence at that time in order to have the procedure available to him. General Statutes § 54-82c (a). . . . Eligible inmates are entitled to a trial within 120 days or to a dismissal of the pending charges, if they follow the procedure outlined in the statutes. First, the inmate must request an expedited hearing under the statutes by giving written notice to the 'warden, community correctional center administrator or

---

[4] The defendant's request for a speedy trial was not date stamped by the clerk's office.

[5] General Statutes § 54-82d provides: "If an action is not assigned for trial within the period of time as provided in section 54-82c, no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment or information be of any further force or effect, and the court shall enter an order dismissing the same."

other official having custody of him . . . .' General Statutes § 54-82c (b). The prison official must then forward the request by certified mail to the 'appropriate prosecuting official and court,' together with a certificate 'stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner and any decisions of the parole board relating to the prisoner.' General Statutes § 54-82c (a). If the procedure is complied with and the case is not assigned for trial within 120 days, then the charges must be dismissed. General Statutes § 54-82d. The trial court may, however, toll the 120-day period by granting, for good cause shown, 'any necessary or reasonable continuance.' General Statutes § 54-82c (a)." (Citations omitted.) *State* v. *Toste*, 198 Conn. 573, 585–87, 504 A.2d 1036 (1986).

The clear statutory language of § 54-82c (a) guides our resolution of the defendant's claim and provides, in relevant part, that a prisoner who has any untried indictment or information against him "shall be brought to trial within one hundred twenty days after he has caused to be delivered, to the *state's attorney . . . and to the appropriate court*, written notice of the place of his imprisonment and his request for final disposition to be made of the indictment or information. . . ." (Emphasis added.) General Statutes § 54-82c (a).

When applying § 54-82c, our Supreme Court has "required strict compliance with the statutory notice procedures." *State* v. *Toste*, supra, 198 Conn. 588; see also *State* v. *McCarthy*, 197 Conn. 166, 496 A.2d 190 (1985) (running of 120 day period not commenced until both court and state's attorney notified); *State* v. *Best*, 171 Conn. 487, 370 A.2d 1035 (1976) (same); *State* v. *Springer*, 149 Conn. 244, 178 A.2d 525 (1962) (same).

"[General Statutes § 54-82c] clearly contemplates delivery to the state's attorney and the court *before* the 120-day period will begin to run." (Emphasis added.) *State* v. *Best*, supra, 491 (interpreting former General Statutes § 54-139, now § 54-82c). "[U]nder [§ 54-82c], the act required to be done in order to start the running of the period of 120 days is the delivery of the prisoner's request, accompanied by his custodian's certificate, to the prosecuting official of the county and the appropriate court. Obviously, a prisoner confined in a penal or correctional institution could not be required to make personal delivery. The General Assembly has therefore provided that the prisoner initiate the request for a trial, has required further that his custodian supply information concerning the prisoner's confinement to the prosecuting official and the court, and has then prescribed the procedure to effect the actual delivery of both. It is the completed delivery of both the request and the supplemental information which starts the running of the period of 120 days within which the prisoner must be brought to trial. . . . The return receipt furnishes ample means of fixing the date from which the 120 days is to be computed." (Internal quotation marks omitted.) *State* v. *McCarthy*, supra, 169–70, quoting *State* v. *Springer*, supra, 249–50.

The language of § 54-82c compels the conclusion that the 120 day period did not commence because notice of the defendant's written request was not received by the state's attorney. Under the circumstances of this case, any alleged negligence or malfeasance on the part of the warden or state's attorney did not eliminate the statutory requirement that notice be received by both the court and the state's attorney in order to trigger the commencement of the 120 day period.[6] *State* v.

---

[6] In light of *McCarthy*, we need not address the outcome if negligence or malfeasance had been shown in this case. We note that the defendant or his attorney presumably could have ascertained at any point whether delivery to the state's attorney had been accomplished.

*McCarthy*, supra, 197 Conn. 166, controls our resolution of this issue. In that case, our Supreme Court declined the defendant's invitation "to create an implied exception" to the commencement date of the 120 day period when a defendant has done "all things required of him to secure his right to a speedy trial under § 54-82c and where the only failure to comply with the statute has been on the part of the warden who, due to inadvertence or malfeasance, has failed to notify the appropriate officials of the defendant's request." (Internal quotation marks omitted.) Id., 170. In *McCarthy*, the state's attorney did not receive the defendant's request until some eighteen months after it was delivered to the warden. Id., 169. Our Supreme Court noted that the defendant failed to offer any evidence indicating that the delay "was caused by the 'inadvertence or malfeasance' of the warden in violation of the warden's statutory duty 'promptly [to] forward' the defendant's request." Id., 171. The court held that "[i]n the absence of any evidence to the contrary, it is presumed that the warden properly performed his duty." Id. In *McCarthy*, our Supreme Court "made it incumbent upon the defendant to show that the prison official was in derogation of his duty and . . . refused to presume that the official had acted improperly under the statute." *State* v. *Toste*, supra, 198 Conn. 589.

Like the defendant in *McCarthy*, the defendant in the present case failed to call the warden to testify at the hearing on his speedy trial motion or otherwise offer any evidence concerning the cause of the lack of delivery of the request to the state's attorney.[7] In fact, during

[7] The defendant, however, attempts to distinguish *McCarthy* by claiming that in the present case it is clear from the record that the basis for the failure of notice to the state's attorney was due to malfeasance or negligence of either the warden or the state's attorney. The defendant argues that *State* v. *McCahill*, supra, 265 Conn. 437, controls the issue. *McCahill* concerns General Statutes § 54-82m and Practice Book § 43-41, which provide that if a criminal defendant who is not incarcerated is not brought to trial within twelve months from the filing date of the information against him or from

the January 13, 2005 hearing on the defendant's motion to dismiss, defense counsel stated that "there's no proof from the department of [correction] that any copy [of the defendant's speedy trial motion] was ever sent to the state's attorney, and the state's attorney says he never received one, so I'm assuming that's true: I'm not denying that." In the absence of any evidence to the contrary, we presume that the officials acted properly under the statute. Because written notice was not delivered to the state's attorney, the statutory 120 day period did not commence. Accordingly, we conclude that the court properly denied the defendant's motion to dismiss.

## II

The defendant next claims that the court abused its discretion in denying his motion to sever the trial of the third count of the information, which arose out of

---

the date of his arrest, whichever is later, and if, absent good cause shown, a trial is not commenced within thirty days of the filing of a motion for a speedy trial, the information shall be dismissed with prejudice.

In *McCahill*, the defendant and the state, at the hearing on the defendant's motion to dismiss the information for lack of a speedy trial, stipulated that the copies of the defendant's motion for a speedy trial filed with the clerk's office and at the office of the state's attorney were misfiled, and, as a result, the filing of the motion was not brought to the attention of those who customarily would respond to it, including, inter alia, the state's attorney. *State* v. *McCahill*, supra, 265 Conn. 442–43. In *McCahill*, our Supreme Court held that the misfiling of the defendant's motion for a speedy trial did not constitute good cause for the state's failure to commence his trial within the time frame required by § 54-82m. Id., 452–53.

The defendant analogizes the present case to *McCahill* and argues that malfeasance or negligence on the part of the state should not delay the commencement of the 120 day period in General Statutes § 54-82c. Contrary to the defendant's contention, *McCahill* does not control. In *McCahill*, the state and the defendant stipulated that the copies of the defendant's motion were filed with the clerk's office and the office of the state's attorney but were misfiled. *State* v. *McCahill*, supra, 265 Conn. 442. In contrast, in the present case, the office of the state's attorney failed to receive notice, and the defendant failed to offer any evidence concerning the cause of such failure. We also note that *McCahill* was decided in the context of a statutory provision; id., 446–53; different from the one involved in the present case.

the May 30, 2003 incident, from the trial of the first and second counts of the information, which arose out of the May 26, 2003 incident.[8] We disagree.

The third count of the information, breach of the peace, arose out of the May 30, 2003 incident, while the first and second counts of the information, attempt to commit assault in the first degree and criminal possession of a firearm, respectively, arose out of the May 26, 2003 incident. On September 2, 2004, the defendant filed a motion to sever, inter alia, the first and second counts of the information from the third count of the information.[9] The court denied the motion and, in a memorandum of decision dated November 10, 2005, concluded that "the evidence of the conduct which led to the charge of breach of the peace would have been admissible in the trial of the first two counts. The conduct involved in the breach of the peace would tend to show an ongoing vendetta against the victim by the defendant and would have been admissible evidence

[8] The defendant also argues that the court failed to instruct the jurors concerning the permissible use of evidence of other misconduct. The defendant failed to request that the court give any such instruction and did not take exception on this ground. This unpreserved instructional claim fails under the second prong of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). See *State* v. *Dews*, 87 Conn. App. 63, 69, 864 A.2d 59, cert. denied, 274 Conn. 901, 876 A.2d 13 (2005). "It is well established in Connecticut . . . that the trial court generally is not obligated, sua sponte, to give a limiting instruction. . . . The failure by the trial court to give, sua sponte, an instruction that the defendant did not request, that is not of constitutional dimension and that is not mandated by statute or rule of practice is not such an obvious error that it will affect the fairness and integrity of and public confidence in the judicial proceedings." (Citations omitted; internal quotation marks omitted.) Id., 70.

[9] A four count information was in effect at the time the defendant filed his motion to sever. Accordingly, the defendant, in his motion, also requested that the fourth count be severed from the first and second counts and that he be granted a separate trial as to the fourth count. An amended information, eliminating the fourth count, was filed prior to the hearing on that motion. Consequently, the hearing and the court's ruling concerned the amended three count information.

to prove the other two counts of the information and therefore would have been heard by the jury at any rate. Moreover, the breach of the peace count involved a separate set of circumstances, which the jury could easily keep separate and distinct from the other two counts in the information and would not result in any confusion."

The principles that govern our review of a court's ruling on a motion for severance are well established. "General Statutes § 54-57 and Practice Book § 829 [now § 41-19] permit a defendant to be tried jointly on charges arising from separate cases. When a defendant stands accused of two or more similar offenses, they may be joined at trial if they are based on related acts that evince a common scheme, intent or motive. . . . The question of joinder or severance rests in the sound discretion of the trial court. . . . The defendant bears the heavy burden of showing that a denial of severance resulted in substantial injustice beyond the curative power of jury instructions. . . . Whether a joint trial will be substantially prejudicial to the rights of the defendant means something more than that it will be less advantageous to the defendant." (Citations omitted; internal quotation marks omitted.) *State* v. *Crosby*, 36 Conn. App. 805, 809, 654 A.2d 371, cert. denied, 232 Conn. 921, 656 A.2d 669 (1995).

The defendant claims that the court improperly denied his motion to sever, and, as a result, he suffered substantial injustice because the evidence in each case was inadmissible in the trial of the other, and the jury improperly may have used the evidence of one case to find him guilty in the other case.[10] Contrary to the

---

[10] Our Supreme Court has recognized three factors that must be considered by a trial court in determining whether severance is appropriate. Those factors are (1) whether the charges involve discrete, easily distinguishable factual scenarios, (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part and (3) the duration and complexity of the trial. *State* v. *Boscarino*, 204 Conn. 714, 722–23, 529 A.2d 1260 (1987). In his brief, the defendant expressly disclaims

defendant's contention, the court's conclusion that the evidence in both incidents would have been cross admissible had the cases been tried separately, as relevant to the defendant's motive or malice, is not unreasonable. Although evidence of prior misconduct is generally inadmissible, "[u]nder § 4-5 (b) of the Connecticut Code of Evidence . . . evidence of prior misconduct may be admitted when it is offered for a purpose other than to establish the defendant's bad character or criminal propensity. . . . [P]rior misconduct evidence may be admissible to prove intent, identity, motive, malice or a common plan or scheme. Conn. Code Evid. § 4-5 (b)." *State* v. *Jacobson*, 283 Conn. 618, 630, 930 A.2d 628 (2007). The defendant's conduct of approaching the victim with a weapon four days after shooting bullets at a car containing the victim may be relevant to show harbored malice against the victim, a desire to harm the victim and a common scheme. "Where evidence of one incident can be admitted at the trial of the other, separate trials would provide the defendant no significant benefit. It is clear that, under such circumstances, the defendant would not ordinarily be substantially prejudiced by joinder of the offenses for a single trial." (Internal quotation marks omitted.) *State* v. *McKenzie-Adams*, 281 Conn. 486, 520, 915 A.2d 822, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007).

The defendant has not demonstrated that the denial of his motion for severance resulted in substantial injustice, nor has he shown that any resulting prejudice was beyond the curative power of the court's instructions. Accordingly, we conclude that the court did not abuse its discretion in denying the defendant's motion to sever.

reliance on the *Boscarino* factors, and, accordingly, we do not address these factors. See *State* v. *Ellis*, 270 Conn. 337, 376, 852 A.2d 676 (2004) ("[i]t is the defendant's burden on appeal to show that joinder was improper by proving substantial prejudice that could not be cured by the trial court's instructions to the jury").

## III

The defendant next claims that the court improperly admitted into evidence five shell casings. Specifically, the defendant argues that the state failed to prove that the casings were those retrieved from the scene of the shooting. We disagree.

The following additional facts are relevant to our resolution of this issue. Dickens testified that the defendant blocked the path of his car and shot bullets into Dickens' car. The state presented several photographs of Dickens' car depicting what Dickens testified were bullet holes that had not been present before the defendant shot at him. Several police officers, including Sergeant Christian Carroccio of the Danbury police department, responded to the scene after receiving complaints that gunshots had been fired. Police found, in the middle of the street, five shell casings and debris from a white vehicle. Carroccio picked up the shell casings. At trial, Carroccio identified the shell casings as the ones found at Irving Place on the day in question and further testified that they were in essentially the same condition as when he had found them and that they had not been altered.[11]

---

[11] Specifically, Carroccio testified as follows:

"[The Prosecutor]: And I'm going to ask you—have a moment—to open this bag, look inside, tell me if you recognize what's inside without saying what it is first, please. If you take it out, just hold it down and just let me know if you recognize what they are.

"[The Witness]: Yes.

"[The Prosecutor]: And can you tell me what those are?

"[The Witness]: These are nine millimeter Luger shell casings.

"[The Prosecutor]: And do you recognize those shell casings?

"[The Witness]: Yes.

"[The Prosecutor]: And where were those shell casings found?

"[The Witness]: They're from the same proximity of 2 Irving Place where I located the car parts as well.

"[The Prosecutor]: And are those shell casings in essentially the same condition as when you found them? Have they been altered at all?

"[The Witness]: No, sir."

We begin by setting forth the legal standards that guide our resolution of the defendant's claim. "An object connected with the commission of a crime must be shown to be in substantially the same condition as when the crime was committed before it can be properly admitted into evidence. . . . The court has broad discretion on this evidentiary issue, and its ruling may not be overturned on appellate review except for a clear abuse of discretion. . . . The state's burden with respect to establishing a chain of custody is met by showing that it is reasonably probable that the substance has not been changed in important respects . . . . The court must consider the nature of the article, the circumstances surrounding its preservation and custody and the likelihood of intermeddlers tampering with it . . . . There is no hard and fast rule that the state must exclude or disprove all possibility that the article has been tampered with." (Citations omitted; internal quotation marks omitted.) *State* v. *Green*, 55 Conn. App. 706, 713, 740 A.2d 450 (1999), cert. denied, 252 Conn. 920, 744 A.2d 438, cert. denied, 529 U.S. 1136, 120 S. Ct. 2019, 146 L. Ed. 2d 966 (2000).

In the present case, the court did not abuse its discretion in admitting the shell casings into evidence. The evidence presented at trial was sufficient to establish that the casings introduced into evidence were the same casings found at the scene. During trial, Carroccio testified that the shell casings were the same casings that he had picked up from the street, that they were in the same condition as when he had picked them up and that the casings had not been altered in any way. "[T]he prosecution is not required or compelled to prove each and every circumstance in the chain of custody beyond a reasonable doubt. . . . It is not necessary for every person who handled the item to testify in order to establish the chain of custody. . . . The state's burden with respect to chain of custody is met by a showing that

there is a reasonable probability that the substance has not been changed in important respects." (Internal quotation marks omitted.) *State* v. *Estrada*, 71 Conn. App. 344, 353, 802 A.2d 873, cert. denied, 261 Conn. 934, 806 A.2d 1068 (2002).

There was no affirmative showing that the five shell casings were tampered with or that there was insufficient proof as to the identification and nature of the contents of the bag containing the shell casings. "The defendant has the obligation of affirmatively showing that the evidence was in some way tampered with, altered, misplaced, mislabeled or otherwise mishandled to establish an abuse of the court's discretion in admitting the evidence." *State* v. *Green*, supra, 55 Conn. App. 713. Accordingly, the court did not abuse its discretion in admitting the shell casings into evidence.

## IV

The defendant next claims that his right to due process was violated by (1) the court's improperly instructing the jury by citing the entire statutory definition of intent, (2) the inclusion of an additional element to the charged crime of attempt to commit assault in the first degree and (3) an improper summary on attempt. We are not persuaded.

The defendant did not preserve these claims of instructional impropriety at trial but seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[12] We will review the defendant's claims because

---

[12] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

there is an adequate record and the claims are of constitutional magnitude. See *State* v. *Fauntleroy*, 101 Conn. App. 144, 154, 921 A.2d 622 (2007) (claim of improper instruction on element of offense of constitutional magnitude).

We begin by setting forth the standard of review applicable to the defendant's claims. "[T]he standard of review is whether it is reasonably possible that the jury [was] misled. . . . [T]he charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . We note that [j]ury instructions need not be exhaustive, perfect or technically accurate, so long as they are correct in law, adapted to the issues and sufficient for the guidance of the jury." (Citation omitted; internal quotation marks omitted.) Id., 155–56.

We address the defendant's claims of instructional impropriety in turn.

A

The defendant claims that it was improper for the court to read the entire statutory definition of intent as contained in General Statutes § 53a-3 (11).[13] The defendant specifically argues that the court should not have read that portion of the definition concerning a person's conscious objective *to engage in conduct*

[13] General Statutes § 53a-3 (11) provides: "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

because that part of the definition relates only to general intent crimes, and attempt to commit assault is a specific intent crime. The defendant claims that, as a result of the improper instruction, his right to due process was violated. We determine that the defendant's unpreserved claim fails under the third prong of *Golding* because the defendant has not shown that a clear constitutional violation exists.

Specific intent to cause physical injury is an essential element of the crime of attempt to commit assault in the first degree. See General Statutes § 53a-59 (a) (5). "To act intentionally, the defendant must have the conscious objective to cause the specific result." *State* v. *Chasse*, 51 Conn. App. 345, 369, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999). In the course of defining intent, the court read the entire statutory definition of § 53a-3 (11), which refers to both intent to cause a result and intent to engage in the proscribed conduct. "Although we have stated that [i]t is improper for the trial court to read an entire statute to a jury when the pleadings or the evidence support a violation of only a portion of the statute . . . that is not dispositive. We next must determine whether it is reasonably possible that the jury was misled by the trial court's instructions." (Citation omitted; internal quotation marks omitted.) *State* v. *Austin*, 244 Conn. 226, 235–36, 710 A.2d 732 (1998).

In this case, the court, during its charge with respect to attempt to commit assault, properly instructed that to find the defendant guilty pursuant to § 53a-59 (a) (5), the jury must find that he "intended to cause physical injury." After twice reiterating that the jury must find that the defendant "had the intention to cause physical injury," the court then instructed the jury regarding intent using the full statutory definition. The court subsequently reiterated twice that the jury must determine that the defendant intended to cause physical injury.

After reviewing the entire charge, we conclude that it was not reasonably possible that the jury was misled by the court's instructions. The challenged language was stated only one time in the instruction on attempt to commit assault and was preceded and followed by numerous proper instructions that in order to be found guilty of attempt to commit assault, the defendant had to intend to cause physical injury. See *State* v. *Francis*, 246 Conn. 339, 356–59, 717 A.2d 696 (1998) (not reasonably possible jury misled by improper instruction on intent when court repeatedly gave proper instruction); *State* v. *Austin*, supra, 244 Conn. 232–37 (any possible risk of jury confusion over court's use of full statutory definition of intent eliminated by numerous proper instructions on elements of crime); *State* v. *Prioleau*, 235 Conn. 274, 321–22, 664 A.2d 743 (1995) (not reasonably possible jury misled when court's only reference to "engage in conduct" was in recitation of statute and court repeatedly gave proper instruction on intent); *State* v. *Chasse*, supra, 51 Conn. App. 367–72 (jury not reasonably misled by court's improper instruction on intent when any risk of possible confusion eliminated by court's numerous proper instructions); cf. *State* v. *Lopes*, 78 Conn. App. 264, 270–72, 826 A.2d 1238 (reasonably possible jury misled when improper charge on intent given three times and proper instructions not given numerous times), cert. denied, 266 Conn. 902, 832 A.2d 66 (2003).

Because the court gave numerous proper instructions regarding the proper intent required for the crime of attempt to commit assault in the first degree, we conclude that it was not reasonably possible that the jury was misled by the court's instructions. The defendant's claim, therefore, fails under the third prong of *Golding*.

B

The defendant next claims that it is reasonably possible that the jury was misled by the court's adding an

extra element to the charged crime of attempt to commit assault in its instructions to the jury. Specifically, the defendant contends that the court improperly instructed the jurors that to find him guilty of the crime, they had to find that he intended to cause physical injury and that he "intended to do so with a firearm." We are not persuaded.

We agree with the defendant that the court's instruction improperly included an additional element of intent to use a firearm because that element is not required under § 53a-59 (a) (5), which requires "intent to cause physical injury . . . by means of the discharge of a firearm."[14] The defendant's claim fails, however, because the improper portion of the charge, although repeated, merely added an additional element that the state was not required to prove. See *State* v. *Clark*, 264 Conn. 723, 736, 826 A.2d 128 (2003) ("[i]f anything, its inclusion . . . was to the state's, and not to the defendant's, detriment"). The defendant, nonetheless, claims that the inclusion of the additional element of intent to use a firearm prejudiced him because, in connection with the instruction on intent, which is addressed in part IV A, it focused the jury's attention on conduct and misled the jury to believe that intent to fire a firearm would have been sufficient to find him guilty. Contrary to the defendant's contention, the charge would focus the jury's attention on the *means* by which the defendant intended to cause physical injury, not his conduct.

The defendant's claim fails to satisfy the third prong of *Golding* because the alleged constitutional violation does not clearly exist. It is not reasonably possible that the jury was misled by the court's instruction.

[14] Specifically, General Statutes § 53a-59 (a) provides in relevant part that "[a] person is guilty of assault in the first degree when . . . (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm."

## C

The defendant next claims that the jury reasonably could have been misled by the court's summary to the jury on attempt to commit assault because it omitted the element that he *intentionally* must have taken a substantial step. The defendant contends that the court exacerbated this impropriety by failing to reiterate, when answering a jury question concerning premeditation, the intent required for attempt.[15]

We begin our analysis of the defendant's claim by noting that "[p]roof of an attempt to commit a specific offense requires proof that the actor intended to bring about the elements of the completed offense. . . . [T]o be guilty of attempt, a defendant's conscious objective must be to cause the result which would constitute the substantive crime." (Citation omitted; internal quotation marks omitted.) *State* v. *Sorabella*, 277 Conn. 155, 169–70, 891 A.2d 897, cert. denied, 549 U.S. 821, 127 S. Ct. 131, 166 L. Ed. 2d 36 (2006).

It was not reasonably possible that the jury was misled by the court's instructions regarding attempt. Prior to giving a summary of its instruction, which the defendant now challenges, the court, when instructing the jury on the law of attempt, stated: "Now, a person is guilty of an attempt to commit a crime when, acting with the mental state required for the commission of the crime, he intentionally does anything which, under the circumstances, is an act constituting a substantial

---

[15] Specifically, the jury's question and the court's answer was as follows: "Your question: does assault in the first degree denote premeditation? No, there is no particular period of premeditation. There is no premeditation required. There is an intent required. When that trigger is pulled, he has to intend to injure, physically injure, any person who he is accused of assaulting. So, there is an intent required, and the intent is to cause physical injury. There is no period of premeditation, all right? It's going to be instantaneous. You can think about it for a week, or it can be instantaneous. No particular period of premeditation. Simply intent to cause physical injury is required."

step in a course of conduct planned to culminate in his commission of the offense." In the summary itself, the court instructed that the jury must find that the defendant "took a substantial step or steps to accomplish his intended purpose but failed to accomplish that purpose for whatever reason." This reference to taking a substantial step with an intent and purpose is sufficient, in light of the instruction as a whole, to apprise the jury of the required elements.

With respect to the jury question, the jury inquired only as to whether assault in the first degree requires premeditation. The jury did not inquire about attempt, and the court did not extend its answer to include questions not asked. See *State* v. *Stavrakis*, 88 Conn. App. 371, 388, 869 A.2d 686 (trial court "not required to broaden the scope of the jury's inquiry"), cert. denied, 273 Conn. 939, 875 A.2d 45 (2005). We conclude that it is not reasonably possible that the jury was misled, and accordingly, the defendant's claim fails under the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.