******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* DARYL PETITT
## (AC 38993)

Lavine, Elgo and Flynn, Js.

*Syllabus*

Convicted, following a jury trial, of three counts of the crime of sale of narcotics, the defendant appealed to this court. The defendant's conviction arose from three drug transactions between the defendant and an undercover police officer, T, who, after each transaction, handed the drugs off to a supervising police officer, C. The drugs were later delivered to the state laboratory, where a forensic science examiner, V, analyzed the drugs and confirmed that they were cocaine. At trial, C identified, solely on the basis of markings on the packaging and the number of bags, exhibit 1 as the cocaine that the defendant had sold to T during the first sale, exhibit 2 as the cocaine sold during the second sale, and exhibit 3 as the cocaine sold during the third sale. Exhibit 1 was admitted into evidence without objection by the defendant, but the trial court sustained the defendant's objections to exhibits 2 and 3, concluding that there was an inadequate foundation for the evidence because C did not have firsthand knowledge that would tie the cocaine to the defendant. T later testified and identified all three exhibits as the cocaine he had purchased from the defendant and subsequently handed off to C. The court overruled the defendant's renewed objections to exhibits 2 and 3 and admitted the exhibits into evidence, stating that the evidence had been authenticated and that the weight given to such evidence was a matter for the jury. *Held*:

1. The trial court did not abuse its discretion in admitting into evidence exhibits 2 and 3, the cocaine from the second and third sales, as that court could have determined with reasonable probability that the contents of those exhibits were in substantially the same condition as when the offense was committed: the chain of custody of each batch of cocaine was reasonably traced to permit the jury to find that what was turned over by T to C, was subsequently tested in the state laboratory, and appeared in court, was the cocaine purchased from the defendant, as the testimony of T and C identifying the cocaine completed the chain of custody from the defendant to the securing of the drugs, and the testimony of V, coupled with an exhibit showing when the cocaine was delivered to the laboratory, completed the chain of custody and provided confirmation that the cocaine seized from the defendant was what V received and tested; furthermore, this court declined to hold that evidence is inadmissible unless it is either unique or distinguishable on its own or unless the first officer to encounter the evidence puts a distinguishing mark on it, as it was not practical to require all cooperating civilian buyers of narcotics to mark, change or alter the appearance of evidence or its packaging before delivering it to the supervising police officers or to require more of undercover police officers than from other cooperating witnesses, and this court was bound by precedent established by our Supreme Court upholding the validity of the chain of custody as a proper means of authentication.

2. The defendant could not prevail on his claim that the trial court committed plain error by admitting into evidence exhibit 1, the cocaine from the first sale between the defendant and T, which was based on his claim that T, who was the only police officer who saw the drug transactions, could not authenticate the drugs; exhibit 1 would have been properly admitted into evidence even if the defendant had objected, as the testimony of V established that exhibit 1 was cocaine, and the testimony of T, C, and V, along with an exhibit showing when the cocaine was delivered to the laboratory, established the same chain of custody for exhibit 1 as was established for exhibits 2 and 3, there was no obvious error affecting the fairness and integrity of the trial where the sole difference in the admissions of exhibit 1 and exhibits 2 and 3 was the defendant's failure to object, and the defendant did not show that any manifest injustice would result from the failure to grant the relief he sought.

Argued September 19—officially released December 5, 2017

*Procedural History*

Substitute information charging the defendant with three counts of the crime of sale of narcotics, brought to the Superior Court in the judicial district of Stamford-Norwalk, geographical area number one, and tried to the jury before *Blawie, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Daniel J. Foster*, assigned counsel, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Richard J. Colangelo, Jr.*, state's attorney, and *Susan M. Campbell*, assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. Real evidence that plays an actual and direct part in the incidents giving rise to a criminal trial may be properly authenticated because it was found or seized at the crime scene. Where that real evidence is a narcotic substance, the state's proof of that narcotic character is properly authenticated by presenting testimony tracing the evidence from the time it was found or, in this case, purchased to the time it is offered in the courtroom with sufficient completeness to render it reasonably probable that what is offered is the original and has neither been changed nor altered.

The defendant, Daryl Petitt, appeals from the judgment of conviction, rendered after a jury trial, of three counts of illegal sale of narcotics in violation of General Statutes § 21a-277 (a). On appeal, the defendant claims the trial court abused its discretion in admitting into evidence crack cocaine from the second and third sales the defendant made to an undercover police officer, who could not authenticate the drugs because he made no distinguishing mark on the contraband. The defendant also claims that the trial court committed plain error by not striking from evidence the crack cocaine from the first sale the defendant made to the officer because the evidence was not first properly authenticated. He seeks reversal of all three counts and a new trial on each of them. We conclude that because the chain of custody was properly established for all three pieces of evidence, the trial court neither abused its discretion nor committed plain error in admitting them into evidence for the jury's consideration. We accordingly affirm the judgment.

The following facts, which the jury reasonably could have found, and procedural history are pertinent to this appeal.[1] In the fall of 2013, a confidential informant informed Stamford Police Officer Michael Connelly that a man who went by the name "DP" was selling crack cocaine. The informant provided Connelly with DP's cell phone number, which one could call to make arrangements with DP to buy drugs. Connelly identified DP as the defendant and, as officer in charge, proceeded to conduct an investigation using an undercover officer.

The investigation consisted of three drug buys using money provided by Connelly, which were conducted by Waterbury Police Detective Maximo Torres acting as undercover officer. Torres wore a Kel monitoring device, which recorded and transmitted audio and global positioning system (GPS) information to other officers stationed nearby. After each sale, Torres met Connelly at a prearranged safe location and gave Connelly the drugs he purchased from the defendant.

The first sale took place on October 29, 2013. On that date, Torres called the defendant and asked for $100 worth of cocaine. The defendant agreed to sell Torres

the cocaine and had Torres meet him at a bodega. There, the defendant and a man the defendant introduced as his cousin got into Torres' car. During the ride, the Kel device recorded the defendant stating that he had three bags left to sell and that he sold "base." Torres drove the two to another location, where the cousin briefly left. The cousin returned with drugs that he then handed to the defendant. Torres drove the two back to the bodega, where the defendant gave Torres six pieces of cocaine in bags in exchange for $100. The defendant and the cousin left. Torres met police at the safe area, where he gave Connelly the six bags of cocaine that he obtained from the defendant. Connelly weighed, field-tested and secured the drugs in an evidence locker pending further testing at the state laboratory.

The second sale occurred on November 5, 2013. Torres called the defendant, and they arranged to meet in downtown Stamford. Torres was met by the defendant and a woman he introduced as his girlfriend. Torres drove them to another location. While the three were in the car outside of the Stamford Police Department, the defendant exchanged six bags of cocaine with Torres for $100. Torres eventually drove the two to a restaurant and dropped them off. Torres met police at the safe area, where he gave Connelly the six bags of cocaine that he obtained from the defendant. Connelly weighed, field-tested and secured the drugs in a police property locker pending future testing at the state laboratory.

The third sale also occurred on November 5, 2013. Torres called the defendant asking for $50 worth of cocaine. Torres picked up the defendant and his girlfriend at the restaurant and drove them to an apartment complex. Upon arrival, the defendant exchanged three bags of cocaine with Torres for $50. After dropping them off, Torres met police at the safe area, where he gave Connelly the three bags of cocaine the defendant had given to him. Connelly weighed, field-tested and secured the drugs in a police property locker pending future testing at the state laboratory.

The drugs Torres purchased from the defendant, which had been weighed, field-tested, and secured by Connelly, later were delivered to the state laboratory by Stamford Police Officer Terry Lauf on June 17, 2014. Vivian Texidor, a forensic science examiner at the state laboratory, was assigned to analyze the drugs to confirm that they indeed were narcotics. She opened the packaging on June 23, 2014, but did not test the drugs until June 30, 2014. After taking photos of the drugs and weighing them, Texidor performed tests and determined that the drugs were cocaine in freebase form.[2] After testing, Texidor sealed the drugs in bags, labeled them and initialed them. At trial, Texidor identified the drugs by the label and her initials.

The defendant was charged with three counts of ille-

gal sale of narcotics. Following a jury trial, he was convicted on all counts, and was sentenced to a total effective sentence of twelve years of imprisonment, followed by five years of special parole. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the trial court abused its discretion when it admitted into evidence the cocaine from the second and third sales. The defendant argues that because Torres did not make any identifying mark on the drugs before he handed them off to Connelly, no witness could authenticate the evidence as being exactly what the defendant had sold to Torres. The state contends that the drugs were positively identified by Torres and that, even absent this positive identification, the drugs were properly authenticated through the chain of custody.

The following additional facts are pertinent to our analysis. At trial, the state introduced its exhibit 1, which Connelly identified as the six bags[3] of crack cocaine the defendant had sold to Torres during the first sale on October 29, 2013. Connelly also identified his name on the bag containing the bags of cocaine and the heat seal the Stamford Police Department put on the outer bag to prevent tampering. The state offered exhibit 1 into evidence, and it was admitted without objection.

Later, the state introduced its exhibit 2. Connelly identified his name written on the outer packaging containing the drugs and the heat seal applied by the property personnel at the Stamford Police Department. Connelly, however, had trouble identifying the evidence through the outer packaging, so he asked for permission to open the outer packaging, which the court allowed. Connelly then was able to identify the exhibit as the six bags of crack cocaine the defendant had sold Torres during the first November 5, 2013 sale. When the state subsequently offered exhibit 2 into evidence, the defendant objected. Defense counsel questioned Connelly as to how he could identify the evidence. Connelly replied that, between the markings on the packaging and the number of bags of cocaine inside, he knew the evidence was what he had received from Torres. The trial court sustained the objection, concluding that there was an inadequate foundation for the evidence because, although Connelly testified that he had received the cocaine from Torres, Connelly did not have firsthand knowledge that would tie the cocaine to the defendant.[4]

Similarly, when the state introduced its exhibit 3, Connelly again had trouble seeing through the outer packaging. After opening it, Connelly identified his name on the evidence. He then identified the three bags of cocaine the defendant had sold to Torres during the second sale on November 5, 2013. The state then offered

the exhibit into evidence, and the defendant again objected. The trial court sustained the objection for the same reasons as before.

Torres later testified and identified all three exhibits as the crack cocaine he had purchased from the defendant and subsequently handed off to Connelly at the prearranged locations.[5] Based on Torres' testimony, the state again offered exhibits 2 and 3 into evidence. The defendant objected to each. During voir dire, defense counsel questioned Torres as to whether there was anything on the evidence that positively identified it to him, which Torres said there was not. The trial court then asked Torres whether he put any identifying mark on the bags himself. Torres stated he did not and that it was not common practice for him to mark evidence before handing it off. Defense counsel also asked Torres whether the Waterbury Police Department used a different label for its evidence than the Stamford Police Department, and Torres confirmed that it did use a different label. The defendant claimed that because cocaine is fungible, Torres could not positively identify the drugs because he did not mark the drugs himself and the labels on the exhibits presented at trial were different from what he would have seen as a Waterbury police officer. The trial court overruled the objections, stating that the evidence had been authenticated and that the weight given to such evidence was a matter for the jury. Accordingly, the court admitted exhibits 2 and 3 into evidence.[6]

A

Section 9-1 (a) of the Connecticut Code of Evidence provides: "The requirement of authentication as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the offered evidence is what its proponent claims it to be." The proponent need only advance prima facie proof that the proffered evidence is what it is claimed to be before the evidence may be admitted, with the ultimate determination of authenticity resting with the fact finder. See, e.g., *State* v. *Bruno*, 236 Conn. 514, 551, 673 A.2d 1117 (1996); *Neil* v. *Miller*, 2 Root (Conn.) 117, 118 (1794). The opposing party is free to offer evidence to discredit this prima facie showing. *Shulman* v. *Shulman*, 150 Conn. 651, 659–60, 193 A.2d 525 (1963).

"For purposes of authentication . . . an adequate foundation to authenticate the exhibit would be testimony that the [real evidence] offered is the [evidence] that was found [at the scene of the crime]. The offered item may possess characteristics that are fairly unique and readily identifiable. If so, the testimony of a percipient witness . . . will be sufficient to support a finding that the [real evidence] is what it is claimed to be. On the other hand, if the offered evidence is of such a nature as not to be readily identifiable, the foundation for authentication will be substantially more elaborate.

Typically, it will entail testimony that traces the chain of custody of the item from the moment it was found to its appearance in the courtroom, with sufficient completeness to render it reasonably probable that the original item has neither been exchanged nor altered." (Footnotes omitted.) 2 C. McCormick, Evidence (7th Ed. 2013) § 213, pp. 13–14.

"[I]n a criminal prosecution, the state has the burden of proving the case set forth in the information in all its material parts beyond a reasonable doubt, so that the court must find, in order to convict, that all the elements of the crime charged have been established beyond a reasonable doubt. . . . The trier must consider, however, the whole evidence, taken together, and is not bound to dissect it into unconnected fragments for a separate microscopic examination of each, regardless of its relation to the rest. . . .

"As a general rule, it may be said that the prosecution is not required or compelled to prove each and every circumstance in the chain of custody beyond a reasonable doubt; the reasonable doubt must be to the whole evidence and not to a particular fact in the case. . . . An object connected with the commission of a crime, however, must be shown to be in substantially the same condition as when the crime was committed before it can be properly admitted in evidence. . . .

"There is no hard and fast rule that the prosecution must exclude or disprove all possibility that the article or substance has been tampered with; in each case the trial court must satisfy itself in reasonable probability that the substance had not been changed in important respects. . . . The trial court must also decide under the same test of reasonable probability whether the identification and nature of contents is sufficient to warrant its reception in evidence. . . . The court must consider the nature of the article, the circumstances surrounding its preservation and custody and the likelihood of intermeddlers tampering with it in making its determination; and there is no rule which requires the state to produce as witnesses all persons who were in a position to come into contact with the substance sought to be introduced in evidence." (Citations omitted.) *State* v. *Johnson*, 162 Conn. 215, 231–33, 292 A.2d 903 (1972).

In the present case, the jury found that the defendant had sold cocaine to Torres. The defendant, though, claims, without citation to any authority, that Torres needed to positively identify the exhibits in order to authenticate them. He contends that such identification was impossible because cocaine is a fungible good that has no unique or distinguishing characteristics on its own, and Torres did not mark this specific cocaine himself. The defendant's contention, as fleshed out during counsel's oral argument before this court, is that it is incumbent on the person who first obtains the

contraband from a defendant to mark it in a particular way at the time of purchase or seizure so that it has a distinguishing characteristic in order for it to be properly authenticated and admitted into evidence for the jury's consideration. The state, however, rightly points out that the items did not have to be conclusively identified through their unique or distinguishing characteristics because a chain of custody was established. The state relies on *State* v. *Hall*, 165 Conn. 599, 345 A.2d 17 (1973), in support of its position.

In *Hall*, an undercover police officer procured drugs from the defendant, which two other officers observed. Id., 601–602. After the sale, the undercover officer handed off the drugs to one of the observing officers, who secured it, conducted a Marquis reagent test, which proved positive for narcotics, and later delivered the drugs to the toxicological laboratory for further testing. Id., 602. At trial, the drugs were admitted into evidence when one of the observing officers was able to authenticate the evidence because he saw the defendant sell the drugs to the undercover officer, who was unavailable to testify because he died prior to trial. Id., 602–605.

The defendant in the present case argues that *Hall* is inapplicable because the other police officers here did not see the transfer of drugs from the defendant to Torres. We disagree, however, and conclude that the operative piece of *Hall* that is relevant here is that *someone* who saw the sale testified to the drugs' authenticity. In *Hall*, it was one of the observing officers. Id., 604. Here, it was Torres.[7]

More on point is *State* v. *Johnson*, 166 Conn. 439, 352 A.2d 294 (1974). In *Johnson*, an undercover officer arranged to purchase heroin from a drug dealer, who needed to obtain the drugs from the defendant, his supplier. Id., 440–41. In a parking lot, the defendant threw a plastic bag into the dealer's car and left. Id., 441. When the dealer went to sell the drugs to the undercover officer, other officers converged on the scene and arrested the dealer. Id. The defendant was apprehended nearby. Id. The plastic bag was taken from the dealer by police and then delivered to the state laboratory for its contents to be tested, which confirmed that the bag contained heroin. Id. The defendant claimed the trial court erred in admitting the plastic bag and its contents because there was insufficient proof of identification. Id., 442. The trial court admitted the evidence after the dealer and police officers identified the bag. Id., 442–43. The dealer testified that the defendant threw a bag into the dealer's car and that the exhibit looked like the same bag the defendant tossed to him, with the only difference being the location of the elastic on the bag. Id., 442. The officer who arrested the dealer testified that the exhibit was the bag he seized from the dealer and then turned over to another officer, who testified that the exhibit was the

bag he received and then delivered to the state laboratory. Id., 442–43. At no point does the opinion suggest that anyone marked the bag. Our Supreme Court found no error because "[t]he trial court must decide under the test of reasonable probability whether the identification and nature of contents are sufficient to warrant the reception in evidence of an offered exhibit, and this ruling of the trial judge may not be overturned except for a clear abuse of discretion" which our Supreme Court did not find. Id., 443.

In the present case, the defendant's argument is no different from the argument that our Supreme Court rejected forty-three years ago. In *Johnson*, the dealer, the arresting officer and the officer who secured the drugs all testified. Id., 442–43. Here, Torres and Connelly provided the same complete chain from the defendant to the drugs' securing. In both cases, there was evidence that, once secured, the drugs were then delivered to the state laboratory, which confirmed the presence of the narcotics in the items seized. Id., 441. Our Supreme Court in *Johnson* found no abuse of discretion in permitting such identification of contraband by an admitted drug dealer who purchased from a supplier; id., 443; we see no abuse of discretion in the admission of such identification by an undercover officer making a supervised controlled purchase, where a chain of custody was traced.

The trial court admitted exhibits 1, 2 and 3 as case law permitted it to do. See *State* v. *Anonymous (83-FG)*, 190 Conn. 715, 724–25, 463 A.2d 533 (1983). Texidor's later testimony coupled with exhibit 15, which documented when Lauf delivered the bags of cocaine to the state laboratory, completed the chain and provided confirmation that the cocaine seized from the defendant was what Texidor received and tested. This chain was traced before the jury commenced deliberation and the seized cocaine evidentiary exhibits were given to them. "It is not unusual to admit an exhibit into evidence before its relationship to the issues of a case has been established. . . . This procedure may expedite the trial, and it is ordinarily not prejudicial because the exhibit may be stricken if the necessary evidentiary foundation is not eventually laid." (Citations omitted.) Id.

Thus, the trial court here, in reasonable probability, could have determined that the contents of exhibits 2 and 3 were in substantially the same condition as when the offense was committed, so as to render the exhibits admissible in evidence, especially in light of all of the other evidence tending to support the reasonable inference that what the defendant sold to Torres was indeed cocaine. The chain of custody of each batch of contraband cocaine was reasonably traced to permit the jury to find that what was turned over by Torres to Connelly and appeared in court was the cocaine purchased from

the defendant. Thus, the trial court did not abuse its discretion in admitting exhibits 2 and 3 into evidence.

### B

The only alternative to the defendant's claim that we can glean from his arguments is that he is asking this court to hold that evidence is inadmissible unless it is either unique or distinguishable on its own or the first officer to encounter the evidence puts a distinguishing mark on it. Not all persons who participate in controlled narcotic purchases are police officers; some are cooperating civilians. It is not practical to require all such cooperating buyers to mark, change or alter the appearance of evidence or its packaging before delivering it to the supervising police officers or to require more of undercover police officers than from other cooperating witnesses. Such intervention would raise questions about its admissibility in an altered state. Furthermore, such a holding would eliminate the chain of custody as a valid option for authentication. Given the extent of Supreme Court precedent upholding chain of custody authentications, we decline to do so.[8] "[I]t is well established that this court, as an intermediate appellate tribunal, is not at liberty to discard, modify, reconsider, reevaluate or overrule the precedent of our Supreme Court." (Internal quotation marks omitted.) *St. Joseph's High School, Inc.* v. *Planning & Zoning Commission*, 176 Conn. App. 570, 595, 170 A.3d 73 (2017). We, thus, are bound by precedent established by our Supreme Court, our highest court and court of last resort in upholding the validity of the chain of custody as a proper means of authentication.[9]

### II

The defendant also claims that his conviction should be reversed because the trial court committed plain error in its admission, without objection by the defendant, of exhibit 1, the cocaine from the first sale between the defendant and Torres. We disagree.

"An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily [discernible] on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . This determination clearly requires a review of the plain error claim presented in light of the record. . . . [T]he plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Citations omitted; internal quotation marks omitted.) *State* v. *McClain*, 324 Conn. 802, 812, 155 A.3d 209 (2017); see also Practice Book § 60-5 ("The court shall not be bound to consider a claim unless it

was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court."). In this case, we conclude that there was no error.

The testimonies of Torres, Connelly and Texidor, coupled with exhibit 15, established the same chain of custody for exhibit 1 as was established for exhibits 2 and 3. Texidor also established that exhibit 1 was cocaine. Accordingly, the exhibit would have been properly admitted into evidence even if the defendant had objected. We fail to see an obvious error affecting the fairness and integrity of the trial where the sole difference in the admissions of exhibit 1 and exhibits 2 and 3 was the defendant's failure to object. In addition, the defendant has not shown that any manifest injustice would result from the failure to grant the relief he seeks. Under these circumstances, there can be no plain error.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] It is worth noting at the outset that the state and the defendant agree on the entire chronology of events, with the defendant only disputing the genuineness of the three exhibits of cocaine presented.

[2] Texidor identified the weight of each exhibit as 1.009 grams for exhibit 1, 0.952 grams for exhibit 2 and 0.512 grams for exhibit 3. Connelly had earlier identified the weights of the cocaine from the first sale weighing 1 gram, the second sale 0.9 grams and the third sale 0.6 grams.

[3] Although we refer to these items as bags, they are tiny knotted bits of glassine about the size of a raisin covering the cocaine.

[4] Although the Kel device provided audio and GPS information to the officers surveilling the sales, there was no video of the exchanges, and Torres was the only officer who saw the sales.

[5] Torres testified that, after the first sale, he "was brought to another prearranged location. At that location . . . I handed over . . . what I purchased from [the defendant] to the case officer." When later asked what, if anything, he had handed to Connelly after the second sale, Torres replied: "What was purchased from [the defendant]." When asked what he had handed off to Connelly after the third sale, Torres replied: "[T]he contraband that was purchased from [the defendant]."

[6] Although Texidor had not yet testified at the time the court admitted exhibits 2 and 3 into evidence, she later testified and identified the exhibits as being what she had tested. She further opined on their status as cocaine. This testimony, coupled with exhibit 15, which was admitted into evidence during Texidor's testimony, provided the remaining links in the chain of custody from the crime scene to the courtroom.

[7] We previously have declined to apply *Hall* in circumstances where either no witness saw the alleged transaction or the witness could not see what precisely changed hands. In *State* v. *Mierez*, 24 Conn. App. 543, 551–54, 590 A.2d 469, cert. denied, 219 Conn. 910, 911, 593 A.2d 136 (1991), officers could not describe what was passed from the defendant to the alleged buyer other than as "small objects," and they saw no money change hands. In *State* v. *Arbelo*, 37 Conn. App. 156, 160, 655 A.2d 263 (1995), no witness saw the alleged drug transaction. Similarly, in *State* v. *Davis*, 38 Conn. App. 621, 625, 662 A.2d 812, cert. denied, 235 Conn. 919, 665 A.2d 907 (1995), no witness saw drugs pass from the defendant to the alleged buyer. Here, because Torres was the buyer and the observing officer, and he paid the dealer the money, and took possession of the drugs those issues are not present.

[8] The defendant's claim would require proof beyond a reasonable doubt for this one link in the chain, when it is clear from our case law that not every step in a chain of custody needs to be proved beyond a reasonable doubt; *State* v. *Johnson*, supra, 162 Conn. 231–33; a point that the defendant concedes on appeal.

[9] We note that the trial court charged the jury, in part, on the chain of

custody, stating: "Where . . . the state relies in whole or in part on circumstantial evidence to prove an element of a crime, although each link in the chain of evidence to support it need not be proven beyond a reasonable doubt, the cumulative impact of that evidence must, in order to support that inference, convince you beyond a reasonable doubt that the element has been proven." This instruction was not objected to, and neither party has addressed it in the arguments.

---