******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## STATE OF CONNECTICUT *v.* JESSE LEE MILLER
## (AC 46598)

Cradle, Clark and Sheldon, Js.

*Syllabus*

Convicted of the crimes of attempt to commit assault in the first degree and assault in the second degree, the defendant appealed. He claimed, inter alia, that the trial court improperly denied his motion to suppress certain evidence, namely, the screwdriver used as a weapon in the assault. *Held*:

The trial court did not abuse its discretion in denying the defendant's motion to suppress the testimony of a police officer at the evidentiary hearing on the motion having been sufficient to establish a reasonable probability that the screwdriver the state intended to offer into evidence was the one found at the scene and that it had not been changed or altered, thereby authenticating it.

This court declined to review the defendant's unpreserved claim that the trial court improperly allowed the state's expert witness to opine on an ultimate issue reserved for the jury.

The trial court did not abuse its discretion in permitting the state's expert witness to opine on a hypothetical question that allegedly omitted a material fact, as the court reasonably could have concluded that the question provided a fair summary of the relevant evidence and that the answer would assist the jury.

The evidence was sufficient to support the jury's verdict as to the defendant's intent to cause serious physical injury as required to support his conviction of attempt to commit assault in the first degree.

The evidence was sufficient to establish that the screwdriver was a dangerous instrument as required to support the defendant's convictions of attempt to commit assault in the first degree and assault in the second degree.

Argued October 8—officially released December 10, 2024

*Procedural History*

Substitute information charging the defendant with the crimes of attempt to commit assault in the first degree and assault in the second degree, brought to the Superior Court in the judicial district of New Haven, geographical area twenty-three, where the court, *Alander, J.,* denied the defendant's motion to suppress certain evidence; thereafter, the case was tried to the

jury before *Alander, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Chad L. Edgar*, assigned counsel, for the appellant (defendant).

*Alexander A. Kambanis*, deputy assistant state's attorney, with whom, on the brief, were *John P. Doyle, Jr.*, state's attorney, and *Kathleen E. Morgan*, assistant state's attorney, for the appellee (state).

*Opinion*

CLARK, J. The defendant, Jesse Lee Miller, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2)[1] and 53a-59 (a) (1),[2] and assault in the second degree in violation of General Statutes § 53a-60 (a) (2).[3] On appeal, the defendant claims that (1) the court improperly denied his motion to suppress, (2) the court erroneously admitted certain expert testimony, and (3) there was insufficient evidence to support his convictions. We affirm the judgment of the court.

The following procedural history and facts, as the jury reasonably could have found them, are relevant to

[1] General Statutes § 53a-49 provides in relevant part: "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. . . ."

[2] General Statutes § 53a-59 provides in relevant part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person by means of a deadly weapon or a dangerous instrument . . . ."

[3] General Statutes § 53a-60 provides in relevant part: "(a) A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, the actor causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm . . . ."

this appeal. The victim, Rupert Beckford, had known the defendant since the latter was a child. On the afternoon of August 9, 2021, the victim traveled by car from the Island Spice restaurant in New Haven to Waterbury, accompanied by Kenyatta Folkes, Hope Woodson, and Folkes' brother. After dropping off Folkes' brother in Waterbury, Folkes, Woodson, and the victim returned to New Haven and parked the car across from Island Spice. Folkes had been driving, with Woodson in the front passenger seat, and the victim in the back seat on the passenger side. Woodson exited the car first and walked toward Island Spice. As the victim was moving to exit the car, the defendant approached the car, pulled open the door, placed his foot inside the car between the victim's legs, and began to punch him and thrust a screwdriver toward his chest. The victim attempted to push the defendant away from him and to shield himself from the thrusted screwdriver. The attack was unprovoked. The victim had heart stents and was sixty-five years old at the time of the offense; at the time of trial, he was approximately five feet, four inches tall and weighed 190 pounds. The defendant was slightly more than six feet tall and weighed more than 200 pounds.

While the attack was occurring, a group of bystanders converged around the car. Folkes jumped out of the car, at which point the defendant moved away from the car and began walking toward the middle of the street. As he did so, the defendant said: "I got him, I got him, who else wants it, I got him." A bystander approached the defendant swinging a baseball bat, and Folkes picked up some stones and threw them at the defendant, knocking the screwdriver out of his hand. The defendant then walked down the street and away from the scene. Woodson called 911.

Officer Brandon Cain of the New Haven Police Department was dispatched to the scene at approximately 5:40 p.m. He located the defendant farther down

the street and placed him in handcuffs. Cain had consistently patrolled the area in which the attack occurred since 2016 and had interacted with the defendant approximately once per week leading up to the date of the offense.

The victim sustained a one centimeter superficial laceration to the right side of his chest—over the area where his lungs and heart were located—as well as small superficial lacerations to his right forearm. He was transported via ambulance to Yale-New Haven Hospital (hospital), where he was admitted to the emergency department at 6:28 p.m. and discharged thirty minutes later. He received Bacitracin and a Band-Aid for his injuries, which were not life-threatening.

The defendant was tried before a jury of six over two days on March 3 and 6, 2023. On March 6, 2023, the jury returned a verdict of guilty of both charges. On May 2, 2023, the court, *Alander, J.*, sentenced the defendant to a total effective sentence of eleven years of incarceration, suspended after six years (of which five were a mandatory minimum), followed by five years of probation. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the court improperly denied his motion to suppress the screwdriver used in the assault of the victim. He argues that the screwdriver should not have been admitted as evidence because there was a break in the chain of custody, and the state thus failed to meet its burden of establishing the screwdriver's authenticity. We are not persuaded.

The following additional facts and procedural history are relevant to this claim. On March 2, 2023, the eve of trial, the defendant filed a motion to suppress the screwdriver, in which he averred that the evidence was

"tainted" because "the chain of custody . . . was broken when [the screwdriver] was commingled with other articles, thus causing the [screwdriver] to be tampered with." The court held an evidentiary hearing on this motion on March 3, 2023, before the start of evidence in the defendant's trial. The state presented the testimony of one witness at the hearing, Sergeant Scott Shumway of the New Haven Police Department; the defendant did not call any witnesses.

Shumway testified that he was dispatched to the location of the incident on August 9, 2021. Other officers were already present at the scene when he arrived, and one of them identified a screwdriver lying on the pavement in a parking lot as the weapon that had been used in the incident. Shumway picked up the screwdriver and placed it loosely in the trunk of his police cruiser. He did not put the screwdriver in an evidence bag at the scene. The trunk contained large bags and other tools. Shumway did not recall that there were any other screwdrivers in the trunk. After placing the screwdriver in his trunk, Shumway drove directly from the scene to police headquarters, where he logged the screwdriver into evidence with the front desk sergeant. The screwdriver was placed in a box used to log knives and other sharp objects into evidence. The state showed this box, which contained a screwdriver, to Shumway on the stand, and asked him whether the screwdriver it contained was the same one he had recovered from the scene. Shumway testified, "[w]ith a high degree of certainty," that the screwdriver in the box was the same screwdriver that he had picked up from the parking lot at the scene of the incident and logged into evidence.

Following Shumway's testimony and brief argument by the parties, the court orally denied the defendant's motion to suppress. The court explained its ruling: "I think based—given [Shumway's] testimony that he's highly certain that that's the screwdriver that he . . .

picked up from the parking lot, put it in his trunk, and then . . . took it—there doesn't seem to be a chain of custody issue here. I mean, he testified that he picked that screwdriver up from the parking lot, put it in his trunk, took it to the police station, had it logged into the . . . evidence room. He testified that he's highly certain that that is the screwdriver. There's . . . no evidence before me that it's—that either it's been altered or changed or exchanged or it's just the wrong screwdriver. I think based on that testimony I'm [going to] allow the state to elicit that evidence."[4]

We begin with the relevant principles of law and standard of review. In order to be admissible, evidence must be authenticated; that is, the offering party must put forth evidence sufficient to support a finding that the proffered evidence is what its proponent claims it to be. Conn. Code Evid. § 9-1 (a). "To establish a foundation for admission, [a]n item offered as real evidence must be positively identified as the item in question. This can be done by establishing unique or distinguishable configurations, marks, or other characteristics, or by satisfactory proof of the item's chain of custody from the time of the incident to the time of trial." (Internal quotation marks omitted.) *State* v. *Dearborn*, 82 Conn. App. 734, 744–45, 846 A.2d 894, cert. denied, 270 Conn. 904, 853 A.2d 523 (2004). The chain of custody will generally be established by "testimony that traces the . . . custody of the item from the moment it was found to its appearance in the courtroom, with sufficient completeness to render it reasonably probable that the original item has neither been exchanged nor altered." (Internal quotation marks omitted.) *State* v.

_____

[4] At trial, the state successfully offered the screwdriver into evidence as a full exhibit through the testimony of Shumway, who—consistent with his testimony at the hearing on the motion to suppress—identified it as the screwdriver he had seized at the scene. The state later showed the screwdriver to the victim, who testified that it was the same screwdriver with which the defendant had stabbed him.

*Petitt,* 178 Conn. App. 443, 452, 175 A.3d 1274 (2017), cert. denied, 327 Conn. 1002, 176 A.3d 1195 (2018), quoting 2 C. McCormick, Evidence (7th Ed. 2013) § 213, pp. 13–14.

"[W]hen the chain of custody of evidence is at issue . . . [t]he state's burden . . . is met by a showing that there is a reasonable probability that the substance has not been changed in important respects. . . . The court must consider the nature of the article, [and] the circumstances surrounding its preservation and custody . . . . As long as the state makes a sufficient preliminary showing regarding the chain of custody, a challenge to the chain of custody pertains to the weight of the evidence rather than to its admissibility." (Citation omitted; internal quotation marks omitted.) *Coccomo* v. *Commissioner of Correction,* 203 Conn. App. 704, 720, 252 A.3d 383, cert. denied, 336 Conn. 943, 249 A.3d 737 (2021). "There is no hard and fast rule that the state must exclude or disprove all possibility that the article has been tampered with"; *State* v. *Green,* 55 Conn. App. 706, 713, 740 A.2d 450 (1999), cert. denied, 252 Conn. 920, 744 A.2d 438, cert. denied, 529 U.S. 1136, 120 S. Ct. 2019, 146 L. Ed. 2d 966 (2000); and "[t]he prosecution is not required or compelled to prove each and every circumstance in the chain of custody beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Rosado,* 107 Conn. App. 517, 532, 945 A.2d 1028, cert. denied, 287 Conn. 919, 951 A.2d 571 (2008).

The court has broad discretion in determining the admissibility of evidence when presented with a chain of custody challenge, and its ruling may not be overturned on appellate review except for a clear abuse of its discretion. See *State* v. *Green,* supra, 55 Conn. App. 713. "In general, abuse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors.

. . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citation omitted; internal quotation marks omitted.) *State* v. *Boutilier*, 133 Conn. App. 493, 501–502, 36 A.3d 282, cert. denied, 304 Conn. 914, 40 A.3d 785 (2012).

Shumway's testimony was sufficient to establish a reasonable probability that the screwdriver was the one found at the scene. Shumway testified that he picked up the screwdriver at the scene, put it in the trunk of his police cruiser, and transported it directly to police headquarters, where he logged it into evidence. Although he testified that there were other items in the trunk, he did not recall there being any other screwdrivers with which the screwdriver used in the underlying assault could have been confused. Significantly, after being shown the screwdriver that the state intended to offer into evidence on the stand, he testified that he had a "high degree of certainty" that that screwdriver was the one he had recovered from the scene. His testimony was sufficient to establish a reasonable probability that the screwdriver the state intended to offer into evidence was the one found at the scene and that it had neither been changed nor altered, and thereby to authenticate it.[5] Accordingly, we conclude that the court

---

[5] The defendant argues that, because Shumway was certain of the screwdriver's identity but unable to recall certain other details pertaining to his recovery of the screwdriver—such as the identity of the fellow officer who told him that the screwdriver at the scene had been used in the assault, the exact address of the incident, or the precise location in his trunk where he put the screwdriver—his testimony was "utterly lacking in credibility." However, "[i]t is axiomatic that this court does not assess the credibility of witnesses," and we decline the defendant's invitation to do so here. *State* v. *Castro*, 60 Conn. App. 78, 80, 758 A.2d 470, cert. denied, 255 Conn. 912, 763 A.2d 1038 (2000).

did not abuse its discretion in denying the defendant's motion to suppress.[6]

## II

The defendant next claims that the court erred by permitting the state's expert witness, Vivek Parwani, the medical director of the department of emergency medicine at the hospital where the victim was transported, to testify as to the injuries that could have been caused by thrusting a screwdriver into a person's chest. In particular, he contends that (1) Parwani's testimony constituted an impermissible opinion on an ultimate issue and (2) the hypothetical question to which Parwani responded omitted an essential material fact, namely, that the hypothetical assailant was intoxicated at the time of the incident. In response, the state argues that the defendant failed to preserve his claim regarding the admission of testimony on an ultimate issue at trial and that its hypothetical question to Parwani was not improper. We agree with the state.

The following additional facts and procedural history are relevant to this claim. At trial, the defendant did not contest that he had attacked the victim with a screwdriver but argued that he was intoxicated at the time of the incident and that his intoxication negated the intent necessary to prove him guilty of either charged offense. The state vigorously disputed this contention. Woodson and Folkes both testified that, on the day of the incident, the defendant had been drinking. Woodson also testified, however, that, after the attack, she did not observe the defendant stumbling over himself and was not sure whether he was slurring his words. Officer

---

[6] Because we conclude that the admission of the screwdriver was not an abuse of the court's discretion, we do not reach the question of whether its admission was harmful. See, e.g., *State* v. *Maner*, 147 Conn. App. 761, 772, 83 A.3d 1182 ("[w]hen an improper evidentiary ruling is nonconstitutional in nature, it is the defendant's burden to demonstrate that such an error was harmful"), cert. denied, 311 Conn. 935, 88 A.3d 550 (2014).

Cain testified that he knew the area of the incident to be the defendant's regular drinking spot and that he had observed the defendant drinking there during most of their prior interactions. He also testified, however, that, on the day of the incident, he did not observe the defendant showing any visible signs of intoxication, such as poor balance or slurred speech, and that the defendant was able to listen to his commands and provide clear answers to his questions.

On the first day of evidence, the state called Parwani to testify as an expert witness. Parwani testified that, on the day of the incident, he was working as an emergency room physician and examined the victim on his arrival at the hospital. He further testified that the victim's injuries were consistent with having been stabbed and that the victim's statements to him and to other hospital personnel were consistent with his injuries. The following exchange ensued during Parwani's direct examination:

"[The Prosecutor]: Okay. Given the location of where [the victim] was stabbed, what other organs or body parts are in that area that could have been affected?

"[The Witness]: He—he was stabbed over the area where his lungs are located and his heart is located.

"[The Prosecutor]: So, showing you what's been marked as state's exhibit 5[7] as a full exhibit, given the size of that screwdriver, given the location of the injuries to [the victim], and given the body parts that are in that area that could have been affected, if that screwdriver went in further to [the victim's] body, what could—what could have been affected? What injuries could have occurred?

---

[7] State's exhibit 5 is a photograph depicting the screwdriver used in the attack, positioned next to a ruler.

"[Defense Counsel]: I'm—I'm [going to] object, foundation. It's a hypothetical. And there's—there's no evidence to—to meet that hypothetical.

"The Court: Yeah. I still—well, let me just check something here for a minute.

"I'm [going to] allow—I'm [going to] allow the question. Overruled.

"[The Witness]: Can you repeat the question?

"[The Prosecutor]: Yes. So, given—assuming the following facts are in evidence, given a screwdriver of that size, assume that, showing you what's been marked as state's exhibit 6,[8] full exhibit, assume the facts of a person over six foot, over 200 pounds thrusting the screwdriver into another person in the area of the right breast, what injuries could have followed from those actions?

"[The Witness]: Or if the screwdriver of that size was thrust, as you note, into the right breast, a patient's lungs as well as their heart [are] located there, one could puncture a lung; one could puncture one's heart. . . .

"[The Prosecutor]: Could that type of injury cause death or a serious impairment to the lung or the heart?

"[Defense Counsel]: I think I'm [going to] object, Your Honor. We've taken a real leap into—

"The Court: Well, let me excuse the jury for a moment. Ladies and gentlemen, I need to excuse you for one moment. I'll have you back in here shortly.

"(Whereupon the jury panel exited the courtroom.)

---

[8] State's exhibit 6 is the evidence box containing the actual screwdriver used in the attack. The state may have meant to refer to exhibit 5, because Parwani had asked the state to repeat its prior question in which it had directed his attention to exhibit 5.

"The Court: So, under count one, the state's charge[d] criminal attempt to commit assault in the first degree—

"[Defense Counsel]: Assault in the first degree.

"The Court: —one of the things they have to prove—

"[Defense Counsel]: Is serious—

"The Court: —is that—well, is that the defendant specifically intended to cause serious physical injury to [the victim]. The reason I let his opinion in as to what—what could have—what—what the screwdriver, the injury that it could have caused, where he said it could have punctured a lung or heart; the other thing the state has to show is that the . . . that if, under the circumstances in which the dangerous instrument was used, it was capable of producing serious physical injury or death. So that's why I let that part in.

"Now, this question is—is specifically what? What are you asking the doctor?

"[The Prosecutor]: Is—could—could an injury to that area cause death or serious physical injury or serious impairment to—

"The Court: Why isn't that relevant to his intent?

"[Defense Counsel]: Why is it relevant?

"The Court: Why isn't it relevant to his intent?

"[Defense Counsel]: It's not the relevan[ce]. It's the foundation. His expert opinion for a hypothetical has to be based on the evidence or testimony that's given and it's not—there's no foundation and, basically, my objection is on the foundation set for that conclusion.

"The Court: Yeah. I—if that's the objection, it's overruled. So, we can have the jury come back, marshal.

"(Whereupon the jury panel entered the courtroom.) . . .

"[The Prosecutor]: Dr. Parwani, could that—could an injury to that area, could that have caused death or serious impairment to the heart or the lung?

"[The Witness]: So, just so I understand the question and correct me if this is not what you're asking, but if a—could a screwdriver to the chest cause serious injury, harm including death. If that—is that the question?

"[The Prosecutor]: Yes.

"[Defense Counsel]: Your Honor, I'm [going to]—that's—to where that particular spot was it may happen.

"The Court: That's my understanding is that's the question.

"[Defense Counsel]: He—he's testifying—

"[The Prosecutor]: To his right breast also.

"The Court: Yeah. That's my question. That's what my understanding is that's what the question is.

"[Defense Counsel]: As long as the doctor understands.

"[The Witness]: Yeah. That's a—a screwdriver to the right breast, could it cause serious injury, harm, or death, and it—it could." (Footnotes added.)

On cross-examination, the defendant did not ask Parwani to consider what, if any, effect an attacker's intoxication might have on the possible injuries that could result from being stabbed in the chest with a screwdriver.

## A

The defendant first argues that, when the court permitted Parwani to testify that being stabbed with a screwdriver could place someone at risk of serious injury or death, it improperly allowed him to opine on

an ultimate issue reserved for the jury. We decline to review the merits of this claim because the defendant failed to preserve it at trial.

"This court is not bound to consider claims of law not made at the trial. . . . Our rules of practice make it clear that when an objection to evidence is made, a succinct statement of the grounds forming the basis for the objection must be made in such form as counsel desires it to be preserved and included in the record. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of his objection, any appeal will be limited to the ground asserted. . . . These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Citations omitted; internal quotation marks omitted.) *State* v. *Bush*, 249 Conn. 423, 427–28, 735 A.2d 778 (1999); see also Practice Book § 60-5.

It is clear, from our review of the record, that at no point did the defendant object to Parwani's testimony on the ground that it expressed an opinion as to an ultimate issue. Rather, he objected that the hypothetical posed to Parwani lacked a sufficient evidentiary foundation. These objections entail different legal inquiries. When a party objects on the ground that an expert is improperly testifying as to an ultimate issue, the court must assess whether the expert is being asked to invade the province of the jury by opining on a question inseparable from the essence of the matter to be decided by the fact finder. See, e.g., *State* v. *Beavers*, 290 Conn.

386, 414–15, 963 A.2d 956 (2009). By contrast, when a party objects on the ground that a hypothetical question posed to an expert lacks a sufficient foundation, the court must assess the extent to which the facts assumed in that question have a basis in the record. See, e.g., *Wallace* v. *Saint Francis Hospital & Medical Center*, 44 Conn. App. 257, 262, 688 A.2d 352 (1997). One objection, in other words, is meant to preserve the integrity of the jury's fact-finding function; the other is designed to ensure the probative value of the expert's testimony. Raising the latter is not equivalent to raising the former. See, e.g., *State* v. *Jose G.*, 290 Conn. 331, 343–45, 963 A.2d 42 (2009) (declining to review evidentiary objection raised for first time on appeal when claim raised on appeal required inquiry distinct from that required by objections raised at trial).[9] As such, we decline to review the defendant's unpreserved claim.

B

The defendant also argues that the hypothetical question the state posed to Parwani—which asked him to opine on the extent of injuries that could result from a person more than six feet tall and weighing more than 200 pounds thrusting a screwdriver into another person's chest—was improper because it omitted the allegedly "material fact" that the hypothetical assailant was intoxicated at the time of the attack. He claims that the court thus erred in permitting Parwani to opine in response to that question. We disagree.

---

[9] In his reply brief, the defendant acknowledges that his trial counsel "stumble[d]" by "struggl[ing] and shift[ing] ground as to the nature of his objection," but argues that, nonetheless, the state was "clearly aware" that it was asking Parwani for his opinion on an ultimate issue and, thus, should have itself requested that the court make findings on whether the jury required an expert's assistance in deciding that issue. This argument lacks merit, because it is the responsibility of the appellant—not the appellee— to provide an adequate record for review. Practice Book § 61-10 (a); see also *State* v. *Feliciano*, 74 Conn. App. 391, 402, 812 A.2d 141 (2002), cert. denied, 262 Conn. 952, 817 A.2d 110 (2003).

As a threshold matter, the defendant did not expressly raise this objection at trial. Though the state does not argue that the defendant failed to preserve this claim, a review of the record discloses that defense counsel objected to the state's hypothetical question only on the ground that it lacked a sufficient foundation in the evidence before the court. Specifically, defense counsel stated: "I'm [going to] object, foundation. It's a hypothetical. And there's—there's no evidence to— to meet that hypothetical"; and "[Parwani's] expert opinion for a hypothetical has to be based on the evidence or testimony that's given and it's not—there's no foundation . . . ." By contrast, a claim that a hypothetical question improperly omitted a material fact does not question the adequacy of the evidentiary basis on which the hypothetical rests but, rather, asks the court to consider whether the hypothetical has properly and fairly marshaled and presented that evidence. See *State v. David N.J.*, 301 Conn. 122, 133, 19 A.3d 646 (2011); see also Conn. Code Evid. § 7-4 (c). As such, the defendant's claim has not been properly preserved for review.

Even if the defendant had properly preserved his claim, however, we do not consider it to be meritorious. See, e.g., *Bodak* v. *Masotti*, 14 Conn. App. 347, 350, 540 A.2d 719 (1988) (determining that plaintiff's claim was not preserved but also rejecting it on its merits). "An expert may give an opinion in response to a hypothetical question provided that the hypothetical question (1) presents the facts in such a manner that they bear a true and fair relationship to each other and to the evidence in the case, (2) is not worded so as to mislead or confuse the jury, and (3) is not so lacking in the essential facts as to be without value in the decision of the case. A hypothetical question need not contain all of the facts in evidence." (Internal quotation marks omitted.) *State v. David N.J.*, supra, 301 Conn. 133. "The determination of the admissibility of a hypothetical question, at least

except in extreme cases, is not to be made by the application of any rule of thumb. . . . Rather, it calls for the exercise of a sound discretion . . . ." (Citation omitted.) *Floyd* v. *Fruit Industries, Inc.*, 144 Conn. 659, 666, 136 A.2d 918 (1957).

The court did not abuse its discretion in permitting Parwani to testify in response to a hypothetical question that omitted any mention of intoxication. Parwani's testimony addressed the question of whether a person of the same height and weight as the defendant could have caused another person serious physical injury by stabbing him in the chest with the screwdriver. This testimony was relevant to whether the screwdriver used in the assault constituted a "dangerous instrument" for purposes of the assault charges. See General Statutes § 53a-3 (7) (defining "dangerous instrument" as "any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury"). To be sure, Parwani's opinion that a hypothetical attacker, of similar build to the defendant, would be capable of causing serious physical injury to another person also was circumstantial evidence from which the jury could have drawn a conclusion as to the defendant's intent at the time of the crime. See, e.g., *State* v. *Ortiz*, 312 Conn. 551, 565, 93 A.3d 1128 (2014) (jury may, though is not required, to infer that defendant intended natural consequences of his voluntary conduct). It is unclear, however, how the fact of intoxication would have altered Parwani's conclusion because Parwani was not actually asked to opine, and did not opine, on the defendant's mental state—the subject matter to which the defendant argued that his alleged intoxication was relevant.[10] Moreover, to the extent that

[10] Indeed, it would have been improper for Parwani to testify as to whether the defendant had the requisite intent to commit the crimes with which he was charged. See *State* v. *Delgado*, 178 Conn. 448, 449, 423 A.2d 106 (1979) ("intent is a question of fact for the determination of the trier of fact based upon the competent evidence presented, and a witness cannot testify as to

the defendant's alleged intoxication *was* material to Parwani's opinion that a person of the defendant's height and weight could cause serious physical injury to another person by stabbing him in the chest with the screwdriver, the defendant could have raised it on cross-examination if he so chose, but he did not. See E. Prescott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) § 7.8.1, p. 467 ("[i]t is the function of cross-examination to bring out the probable effect of additional facts on a hypothetical question"), citing *Pischitto* v. *Waldron,* 147 Conn. 171, 177, 158 A.2d 168 (1960). Especially because a hypothetical question need not contain all the facts in evidence, the court reasonably could have concluded that the state's question provided a fair summary of the relevant evidence and that Parwani's answer would assist the jury in determining whether the defendant could have caused the victim serious physical injury by stabbing him in the chest with the screwdriver. Therefore, the defendant's claim fails.[11]

## III

Finally, the defendant claims that there was insufficient evidence to support his convictions. Specifically, he argues that there was insufficient evidence that (1) he intended to cause the victim serious physical injury and (2) the screwdriver qualified as a "dangerous instrument." We disagree.

"It is well settled that a defendant who asserts an insufficiency of the evidence claim bears an arduous burden. . . . In reviewing a sufficiency of the evidence claim, we apply a two part test. First, we construe the

the uncommunicated intent of another person where the trier of fact is as well qualified as the witness to form an opinion on the subject"); see also General Statutes § 54-86i.

[11] As with the defendant's challenge to the denial of his motion to suppress, we do not address the question of whether the defendant was harmed by the admission of Parwani's testimony in response to the hypothetical because we conclude that its admission was not erroneous.

evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . .

"[T]he jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"In evaluating evidence, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [jury] may draw whatever inferences from the evidence or facts established by the evidence [that] it deems to be reasonable and logical. . . .

"Finally, on appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citations omitted; internal quotation marks omitted.) *State* v. *VanDeusen*, 160 Conn. App. 815, 822–23, 126 A.3d 604, cert. denied, 320 Conn. 903, 127 A.3d 187 (2015).

A

The defendant first claims that there was insufficient evidence that he intended to cause the victim serious physical injury, as required to support his conviction of attempt to commit assault in the first degree. We are not persuaded.

In order to convict a defendant of attempt to commit assault in the first degree, in violation of §§ 53a-49 (a) (2) and 53a-59 (a) (1), the state must prove that the defendant engaged in intentional conduct constituting a substantial step toward intentionally causing the victim serious physical injury by means of a dangerous instrument. See *State* v. *Andrews*, 114 Conn. App. 738, 744, 971 A.2d 63, cert. denied, 293 Conn. 901, 975 A.2d 1277 (2009). " 'Serious physical injury' means physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health, or serious loss or impairment of the function of any bodily organ . . . ." General Statutes § 53a-3 (4); see also *State* v. *Liam M.*, 176 Conn. App. 807, 814, 172 A.3d 243, cert. denied, 327 Conn. 978, 174 A.3d 196 (2017). [Section] 53a-3 (11) provides in relevant part that "[a] person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

"Intent may be, and usually is, inferred from [a] defendant's verbal or physical conduct [as well as] the surrounding circumstances. . . . Nonetheless [t]here is no distinction between circumstantial or direct evidence so far as probative force is concerned. . . . Moreover, [i]t is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier

is an unreasonable one." (Internal quotation marks omitted.) *State* v. *Santiago*, 206 Conn. App. 390, 402, 260 A.3d 585, cert. denied, 339 Conn. 918, 262 A.3d 138 (2021).

"[T]he [jury is] not bound to accept as true the defendant's claim of lack of intent or his explanation of why he lacked intent." (Internal quotation marks omitted.) *State* v. *Delgado*, 247 Conn. 616, 623–24, 725 A.2d 306 (1999). "Intent may be gleaned from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading up to and immediately following the incident. . . . Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct." (Internal quotation marks omitted.) *State* v. *Salaman*, 97 Conn. App. 670, 677, 905 A.2d 739, cert. denied, 280 Conn. 942, 912 A.2d 478 (2006).

On the basis of the evidence presented, the jury could reasonably could have found that the defendant intended to cause the victim serious physical injury when he attacked him with a screwdriver. The victim testified that the defendant trapped him in the car, "came in at [him]" with the screwdriver, and "steadily tr[ied] to push the screwdriver in [him]" while also striking him in the face. He explained that, although his wounds were minor, he only avoided more serious injuries because he partially shielded himself against the defendant and because the defendant was unable, given his size, to fit his whole body into the car. The victim also heard bystanders "hollering that he's killing [the victim]." Folkes and the victim both testified that, after the defendant ceased his attack, he stated: "I got him." Parwani testified that the victim was stabbed over the area where his lungs and heart were located, which could have killed him or caused a serious injury such

as a punctured organ.[12] Viewed cumulatively, this evidence—in particular the weapon used, the area in which the defendant attempted to stab the victim, his aggressive demeanor during the attack, and his statement afterward—provides a sufficient basis from which the jury reasonably could have inferred that the defendant acted with the conscious objective of causing the victim serious physical injury.

The defendant's arguments to the contrary are not convincing. He highlights the fact that, at certain points in his testimony, the victim characterized the defendant's screwdriver thrusts as " 'poking' and 'pushing,' rather than a more violent action like swinging or thrusting," and argues that this word choice suggests that the defendant only intended to cause the victim minor injury. The defendant, however, ignores the fact that, elsewhere in his testimony, the victim also described the defendant's actions as "stabbing." Likewise, the defendant claims that the evidence establishes that he "cease[d] his attack . . . of his own volition" before seriously injuring the victim and claims that, given his own size and the victim's vulnerable position, he "could have easily" caused the victim serious injury "if he was intent on" doing so. Folkes, however, testified that the defendant only stopped attacking the victim and backed away from the car once Folkes jumped out of the car

---

[12] The defendant argues that, because, in his view, Parwani's testimony on this point was erroneously admitted, "it should not enter the calculus when assessing whether the state produced sufficient evidence as to [the defendant's] intent." As discussed previously, we reject the defendant's claim that the trial court improperly admitted Parwani's testimony that the screwdriver was capable of causing serious physical injury. Even if we agreed with the defendant that Parwani's testimony was improperly admitted, however, we would still consider it when evaluating the defendant's sufficiency of the evidence claim. See, e.g., *State* v. *Morelli*, 293 Conn. 147, 153, 976 A.2d 678 (2009) ("even improperly admitted evidence may be considered in [evidentiary sufficiency] analysis, since [c]laims of evidentiary sufficiency in criminal cases are always addressed independently of claims of evidentiary error" (internal quotation marks omitted)).

and ran around toward the defendant and that the defendant did not walk away until Folkes knocked the screwdriver out of his hand and a bystander swung a baseball bat at him. The jury could reasonably have inferred from this testimony that the defendant was, in fact, intent on causing more serious injury to the victim than he ultimately inflicted and only ceased his attack because Folkes and others intervened.[13] Although the defendant asserts that the fact that he "walked" away after the attack and challenged bystanders to fight him indicates that he was "calm," "unafraid of confrontation," and could not have been "easily deterred by the likes of [Folkes]," the jury was not required to draw that inference, especially because there is no indication that the defendant attempted to resume his attack after Folkes and the bystander confronted him. Nor was the jury required to infer, as the defendant insists, that when he shouted, "I got him," he meant "that he was satisfied with a superficial laceration." "I got him" could just as reasonably be interpreted to indicate that the defendant had intended to hurt the victim badly and believed that he had succeeded in doing so.[14]

Ultimately, the defendant's arguments boil down to a request that we view the evidence in the light most favorable to him and draw inferences consistent only with his innocence, which we may not do on sufficiency review. The evidence was sufficient to support the jury's verdict as to the defendant's intent to cause serious physical injury.

---

[13] Recognizing that Folkes' testimony undercuts his argument, the defendant asks us to find that Folkes lacked credibility. We cannot and will not do so. See footnote 5 of this opinion.

[14] The defendant also argues that his choice of a screwdriver as a weapon, rather than "a knife or a gun or similarly dangerous weapon," indicates that he did not intend to cause serious physical injury. But given that there was sufficient evidence of the screwdriver's capacity to inflict serious physical injury; see part III B of this opinion; the jury reasonably could have determined that the defendant's choice of this weapon indicated an intent to cause such an injury to the victim.

## B

The defendant also claims that the evidence was insufficient to establish that the screwdriver was a "dangerous instrument," as required to support his convictions of attempted assault in the first degree and assault in the second degree. We disagree.

"A dangerous instrument means any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury. . . . [A] dangerous instrument may be an ordinary object not designed to cause death or serious physical injury. . . . [E]ach case must be individually examined to determine whether, under the circumstances in which the object is used or threatened to be used, it has the potential for causing serious physical injury." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Barnett*, 53 Conn. App. 581, 590, 734 A.2d 991, cert. denied, 250 Conn. 919, 738 A.2d 659 (1999). "[I]t is not necessary, under . . . the definition of a dangerous instrument, that any physical injury actually have been inflicted. It [is] only necessary that the [instrument] have been under the circumstances in which it was used . . . capable of causing death or serious physical injury." (Internal quotation marks omitted.) *State* v. *Jones*, 173 Conn. 91, 95, 376 A.2d 1077 (1977).

The defendant argues that, because assessing whether an object qualifies as a dangerous instrument requires a case-by-case inquiry into the "circumstances in which the object is used or threatened to be used," it follows that the question of whether a screwdriver is a dangerous instrument "depends on whether the person using it in a given circumstance intended to cause serious physical injury or death to another." As such, he claims, if there is insufficient evidence of his intent to cause

serious physical injury, there must therefore be insufficient evidence that the screwdriver was a dangerous instrument. We are not persuaded.

As an initial matter, we have already concluded in part III A of this opinion that there was sufficient evidence of the defendant's intent to cause serious physical injury or death. Moreover, even had we not so concluded, this court rejected an identical argument to the one made here in *State* v. *Schultz*, 100 Conn. App. 709, 722–23, 921 A.2d 595, cert. denied, 282 Conn. 926, 926 A.2d 668 (2007). In *Schultz*, the defendant—who had been convicted of assault in the first degree in violation of § 53a-59 (a) (1) for smashing a cocktail glass into the victim's face—argued that the trial court had improperly denied his request for an instruction on a lesser included offense, because the evidence regarding whether the glass qualified as a "dangerous instrument" was sufficiently in dispute. Id., 719–22. In particular, the defendant argued that the glass' status was sufficiently disputed because he did not intend to inflict serious injury when he struck the victim with it. Id., 722. This court emphasized, however, that "[a]ny dispute concerning the defendant's intent to cause serious physical injury . . . is not relevant to our determination of whether it was sufficiently in dispute that the glass was a dangerous instrument . . . ." Id., 723. As such, our inquiry into whether there was sufficient evidence that the screwdriver constituted a dangerous instrument does not depend on whether there was sufficient evidence of the defendant's intent to cause serious physical injury or death.

On the basis of our review of the record in this case, we conclude that there was sufficient evidence in the record for the jury to find that the screwdriver used by the defendant constituted a dangerous instrument. Parwani testified that a screwdriver such as the one used in the assault could, when thrust into someone's

chest, puncture a lung or the heart, possibly killing that person. Such an injury clearly meets the definition of "serious physical injury" under § 53a-3 (4), namely: "physical injury which creates a *substantial risk of death*, or which causes serious disfigurement, *serious impairment of health*, or serious *loss or impairment of the function of any bodily organ* . . . ." (Emphasis added.) As such, even though the victim suffered only superficial injuries, the jury reasonably could have found that, under the circumstances in which the defendant used the screwdriver—thrusting it at the victim's chest—the screwdriver was capable of causing death or serious physical injury. Accordingly, the defendant's claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.